UNITED STATES of America,
Plaintiff-Appellee,

v.

The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,
Defendant-Appellant.

No. 80–1106.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 18, 1980.

Decided Oct. 10, 1980.

Anita Dymant, Asst. U.S. Atty., Andrea Sheridan Ordin, U.S. Atty., Los. Angeles, Cal., for plaintiff-appellee.

Frederick G. Pfrommer, San Francisco, Cal., John H. Ernster, Los Angeles, Cal., Ronald N. Cobert, Washington, D.C., for defendant-appellant.

Before PREGERSON, NELSON, Circuit Judges and TURRENTINE,* District Judge.

TURRENTINE, District Judge:

On May 21, 1979, defendant The Atchison, Topeka and Santa Fe Railway Company, a corporate common carrier, was indicted for fifty violations of the Elkins Act, 49 U.S.C. § 41(1). The indictment charged that defendant "knowingly offered and granted concessions" which "caused property to be transported at a rate less than that named in the tariffs published and filed by defendant ... with the Interstate Commerce Commission." On January 17, 1980, defendant was found guilty on all but two of the fifty counts.

---

* The Hon. Howard B. Turrentine, District Judge for the Southern District of California, sitting by designation.

The evidence established that throughout 1975 defendant railroad furnished State of California Department of Motor Vehicles trip permits to its customers. Trip permits are short-term licenses for operation of vehicles beyond the railroad ramp area (i.e., on highways) for a five day period. These $5.00 permits are required under California law for truck trailers not permanently registered in California. Defendant provided the permits without separate charge to its shipper-customers for traffic moving under a "Plan IV" tariff. "Plan IV" transportation is a type of trailer-on-flat-car (TOFC) service in which the railroad receives customer-owned or leased truck trailers at the point of origin ramp and places the trailers on railroad flatcars for transportation to the destination, where the trailers are unloaded into the ramp area. The customers then pick up the trailers, attach them to tractors, and move them onto the highway for transportation to the final destination. Under "Plan IV" the defendant's responsibility ends at the ramp area.

Defendant amended its tariff on July 6, 1976 to specifically permit defendant to pay for the permits on behalf of its shippers. There is no dispute that prior to this date defendant paid for the permits in the instances for which it was convicted, as well as on hundreds of thousands of other occasions.

The Elkins Act imposes criminal liability on carriers which fail to strictly adhere to the terms of the applicable published tariffs. The Act expressly prohibits carriers from granting, and shippers or their agents from receiving, concessions which deviate from the published rates. 49 U.S.C. § 41(1). There is also a conclusive presumption that any deviation from the tariff rate filed with the ICC constitutes a criminal violation of the Act. 49 U.S.C. § 41(1).

The defendant contends that the trial court committed prejudicial error for the following reasons:

1. The court failed to grant defendant's motion to stay proceedings and refer the matter to the ICC for resolution.

2. The court improperly excluded evidence regarding construction of the tariff.

3. The court ruled construction of the tariff was a matter of law.

4. The court failed to properly instruct the jury on the question of tariff interpretation.

5. The court did not permit defendant to prove that its interpretation of the tariff was in good faith.

■ Defendant contends the permit issue is within the primary jurisdiction of the ICC because of the necessity for uniformity in tariff interpretation, and that the Commission should be required by court order to consider the question before a criminal prosecution may commence. The question of the construction of an interstate tariff is one of federal law. Where words are used in their ordinary sense preliminary resort to the ICC is unnecessary. *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 290, 42 S.Ct. 477, 478–79, 66 L.Ed. 943 (1922).

■ At trial the defendant offered expert testimony for the purpose of interpreting the tariff to mean that the permit fees were included. In excluding the tendered evidence the court correctly held that the interpretation of the tariff was a matter of law and that there were "no colorable ambiguities or technical connotations in the language of the tariff." *See Penn Central Co. v. General Mills, Inc.,* 439 F.2d 1338, 1340–41 (8th Cir.1971).

■ The trial court refused to admit evidence in support of defendant's defense of good faith tariff interpretation. It is clear that the Elkins Act created a malum prohibitum rather than a malum in se offense. Proof of evil intent is not an element of a charge under the Elkins Act. *Armour Packing Co. v. United States,* 209 U.S. 56, 69–72, 28 S.Ct. 428, 430–432, 52 L.Ed. 681 (1908); *Union Petroleum Corp. v. United States,* 376 F.2d 569, 573 (10th Cir.), *cert. denied,* 389 U.S. 838, 88 S.Ct. 57, 19 L.Ed.2d 101 (1967).

The judgment below is affirmed.