**FARLEY TRANSPORTATION CO., INC., Farley Terminal Co., Inc., Piggyback Trailermate, Inc., Systems Terminal, Inc., Plaintiffs,**

v.

**The SANTA FE TRAIL TRANSPORTATION COMPANY, et al., Defendants.**

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Defendant/Counter-Claimant/Appellee,**

v.

**FARLEY TRANSPORTATION CO., INC., Farley Terminal Co., Inc., Plaintiff/Counter-Defendant/Appellant.**

**No. 84–5947.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 6, 1985.

Decided Dec. 16, 1985.

Maxwell M. Blecher, Blecher, Collins & Weinstein, Los Angeles, Cal., for plaintiff/counter-defendant/appellant.

Thomas I. McKnew, Jr., Benson C. Marshall, Los Angeles, Cal., Joseph H. Cummins, Barry Van Sickle, Los Angeles, Cal., for defendant/counter-claimant/appellee.

Before WALLACE, CANBY, and BEEZER, Circuit Judges.

WALLACE, Circuit Judge:

Farley Transportation Company, Inc. (Farley) appeals from a judgment entered in favor of the Atchison, Topeka & Santa Fe Railway Company (Santa Fe) on a motion for summary judgment to enforce a tariff provision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

In October 1979, Farley and other related Farley companies filed an action (the antitrust action) against Santa Fe and a number of other companies alleging violations of the antitrust laws and the Interstate Commerce Act. Santa Fe counterclaimed for breach of contract, alleging that Farley owed unpaid freight and detention charges. After a pretrial conference, Santa Fe's counterclaim was amended to include Class 70 tariff charges under Trans-Continental

Freight Bureau Tariff 2–P, Item 4900, Note 7.

In December 1979, two months after Farley filed the antitrust action, a tariff inspector from the Trans-Continental Freight Bureau (the Bureau) attempted to verify freight records of shipments on the Santa Fe, Union Pacific, and Southern Pacific railroads. The Bureau acts as an agent for Santa Fe and other railroads pursuant to tariffs approved by the Interstate Commerce Commission (the Commission). The Bureau is authorized to audit shippers' records of shipments on common carriers to ensure that shippers have correctly described the commodity and weight of items shipped and applied the proper tariff. If a carrier or its authorized agent is denied access to verifying records, then a Class 70 rate tariff is imposed. The Class 70 rate is equal to ten times the shipping charge for each bill of lading withheld from inspection by a shipper or shipper's agent. The Class 70 tariff is designed to discourage unlawful shipping practices and to compel disclosure of freight charge documentation.

At the time of the Bureau's initial request, Farley permitted inspection of records pertaining to Union Pacific and Southern Pacific railroads, but on the advice of counsel and in light of the antitrust action denied the request to audit records of shipments on Santa Fe. The Bureau requested access to Farley's Santa Fe records on a periodic basis through September 1981, but its requests were consistently denied.

Thereafter, pursuant to discovery motions in the antitrust action, Farley turned over to Santa Fe the records that the Bureau had attempted to audit. More than a year later, counsel for Farley notified the Bureau that Farley would permit an audit of Santa Fe records to verify compliance with tariff provisions. A few days thereafter, Farley filed a motion for summary judgment on Santa Fe's Class 70 tariff counterclaim. The district judge denied the motion and, after setting forth his analysis of the issues, invited Santa Fe to move for summary judgment. Santa Fe did so, and

the district court entered judgment in the amount of $454,707.63 for Class 70 tariff charges against Farley and Farley Terminal Company, Inc. (Farley Terminal), one of the related Farley companies involved in the antitrust action. Farley timely appealed.

II

Santa Fe contends that we have no jurisdiction to hear the appeal of Farley's related company, Farley Terminal, because it was not named in the notice. The notice of appeal from the district court's grant of partial summary judgment lists only "Farley Transportation Co., Inc." as appellant. Rule 3(c), Fed.R.App.P., states in part that "[t]he notice of appeal shall specify the party or parties taking the appeal." We, therefore, must determine whether Farley Terminal is a party to this appeal.

[1] Filing a notice of appeal within the 30-day period specified in rules 3(a) and 4(a), Fed.R.App.P., is mandatory and jurisdictional. Absent compliance, the appeal must be dissised. *See Rodgers v. Watt*, 722 F.2d 456, 457–58 (9th Cir.1983) (en banc); *Wallace v. Chappell*, 637 F.2d 1345, 1346 (9th Cir.1981) (en banc) (per curiam). For example, in *Cook & Sons Equipment, Inc. v. Killen*, 277 F.2d 607 (9th Cir.1960) (*Cook*), a judgment had been entered against two individuals and a corporation in the district court, but only the corporation was named as an appellant in the notice of appeal. We rejected the individuals' claim that a clerical error caused their names to be omitted, and disallowed amendment of the notice.

The omission here was much more than a clerical error. It was a failure of the individual defendants to appeal. We have no authority to amend the notice of appeal so as to bring in additional parties.... Rule 73(b) [, Fed.R.Civ.P., the predecessor to rule 3(c), Fed.R.App.P.] requires that the notice of appeal specify the parties taking the appeal. Only the parties named in the notice of appeal are brought within the appellate court's jurisdiction.... The harmless error doc-

trine has no application to failure to name parties in a notice of appeal. *Id.* at 609. Santa Fe contends that *Cook* is controlling and that the omission of Farley Terminal is more than a mere clerical error. During oral argument, Farley admitted that if *Cook* is applied, Farley Terminal is not a party to this appeal. Farley argues, however, that *Cook* is not dispositive of this issue because: (1) it precedes the Federal Rules of Appellate Procedure; (2) it conflicts with the Supreme Court's ruling in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (*Foman*); and (3) it conflicts with Supreme Court Rule of Practice 10.4, which Farley contends we have adopted. We will discuss each argument in turn.

That *Cook* was decided prior to adoption of the Federal Rules of Appellate Procedure does not prevent it from being dispositive of this question. The predecessor rule 73(b) of the Federal Rules of Civil Procedure, which *Cook* interpreted as requiring the notice to specify each of the parties taking an appeal, is in all relevant respects identical to language in rule 3(c) of the Federal Rules of Appellate Procedure.

■ We also do not believe that the Supreme Court's decision in *Foman* has altered the law in this circuit as suggested by Farley. In *Foman,* the Supreme Court held that it is "contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of" technical violations of the rules. 371 U.S. at 181, 83 S.Ct. at 229. This does not mean that failure to comply with the rules is of no consequence merely because it does not mislead or prejudice the other party. Adopting a purely "equitable" approach to applying the rules would result in unpredictability and defeat the purpose of the rules, which is to promote the orderly resolution of disputes and to discourage dilatory practices. *See McCormack v. Schindler (In re Orbitec Corp.),* 520 F.2d 358, 362 (2d Cir.1975). Furthermore, in multiparty litigation it is important that the notice specify which of the parties is taking an appeal. *See Samuel v. University of*

*Pittsburgh,* 506 F.2d 355, 356–57 n. 1 (3d Cir.1974); *see also* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3949, at 356 (1977) ("where there are multiple aggrieved parties, only those who join in the notice of appeal will be deemed to have taken an appeal"). A literal interpretation of rule 3(c) creates a bright-line distinction and avoids the need to determine which parties are actually before the court long after the notice of appeal has been filed.

Nor do we conclude that *Foman* overruled *Cook.* In our recent decision of *Southwestern Media, Inc. v. Rau,* 708 F.2d 419 (9th Cir.1983) (*Southwestern*), we implicitly affirmed the continuing vitality of *Cook,* and stated that *Cook* applies "where a party is being added." *Id.* at 422 n. 2. That is precisely what is being attempted at this late date—the addition of Farley Terminal as a party to the appeal.

Our interpretation of rule 3(c) is supported by *Van Hoose v. Eidson,* 450 F.2d 746 (6th Cir.1971) (*Van Hoose*), a post-*Foman* decision by the Sixth Circuit. In *Van Hoose,* four students had requested a district court to declare a hair code unconstitutional and to grant injunctive and other relief. The district court denied the request, and a notice of appeal was filed by "Van Hoose, et al." The defendant moved to dismiss the appeal, alleging that Van Hoose's claim was moot and that the other students had not taken an appeal. Relying on *Cook,* the Sixth Circuit granted the dismissal as to the unnamed students after concluding that "[t]he term 'et al' does not inform any other party or any court as to which of the plaintiffs desire to appeal in this case. This is more than a clerical error." *Id.* at 747; *see also Covington v. Allsbrook,* 636 F.2d 63, 64 (4th Cir.1980) (extending *Van Hoose* to require "actual signing by pro se parties desiring to join in an appeal"), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1990, 68 L.Ed.2d 305 (1981).

■ Finally, Farley contends that *Cook* is not dispositive because we should apply rule 10.4 of the Rules of the Supreme Court in this case. Rule 5 of the Rules of

the United States Court of Appeals for the Ninth Circuit states that when "the Federal Rules of Appellate Procedure and the Rules of the United States Court of Appeals for the Ninth Circuit are silent as to a particular matter of appellate practice, any relevant rule of the Supreme Court of the United States shall be applied." Farley reads our rule 5 as adopting rule 10.4, which deems "[a]ll parties to the proceeding in the court from whose judgment the appeal is being taken" to be parties to the appeal absent written notification to the contrary. We disagree because the Federal Rules of Appellate Procedure are not silent on this point. Rule 3(c) specifies that the party or parties taking the appeal should be listed on the notice. Farley's reliance on *Reynolds Trading Corp. v. United States*, 486 F.2d 1077 (C.C.P.A. 1973) (*Reynolds*), also is misplaced. Rule 3 of the United States Court of Customs and Patent Appeals specified that process should conform to the form and style of the Supreme Court; hence, rule 10.4 applied. *Id.* at 1079. The court distinguished *Cook* because it involved noncompliance with the very rule at issue in this case. *Id.* at 1080.

■ Notwithstanding Farley's efforts to convince us to the contrary, we hold that *Cook* is dispositive of this issue. We do not have jurisdiction to consider Farley Terminal's claim because it failed to file a rule 3(c) notice of appeal.

### III

■ We now determine whether the district court erred in declining to stay Santa Fe's motion for summary judgment pending a referral of the matter to the Commission. This implicates the primary jurisdiction doctrine, the application of which is a question of law reviewable de novo. *See United States v. Yellow Freight System, Inc.*, 762 F.2d 737, 739 (9th Cir.1985) (*Yellow Freight*).

■ " 'The doctrine of primary jurisdiction ... is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.' " *Id.* at 739,

*quoting United States v. Western Pacific Railroad*, 352 U.S. 59, 63, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956) (*Western Pacific*). The doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are "within the special competence of an administrative body." *Western Pacific*, 352 U.S. at 64, 77 S.Ct. at 165. No fixed formula, however, exists for applying the doctrine, *id.*, and each case must be examined on its own facts to determine if "the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* If the doctrine applies, the judicial process should be suspended and the issues referred to the appropriate administrative body for its views. *Id.; Yellow Freight*, 762 F.2d at 739.

The Supreme Court has held that the primary jurisdiction doctrine requires the Commission to be the first to construe a tariff if construction of the tariff "raises issues of transportation policy" that necessitate "a uniform and expert administration of the regulatory scheme laid down by [the Interstate Commerce] Act." *Western Pacific*, 352 U.S. at 65, 77 S.Ct. at 165. Hence, the primary jurisdiction doctrine applies when the resolution of the issues requires consideration of cost allocations or interpretation of previously undefined technical terms. *Id.* at 69, 77 S.Ct. at 167; *Norfolk & Western Railway v. B.I. Holser & Co.*, 629 F.2d 486, 488 (7th Cir.1980). The doctrine "does not apply if the [Commission] has already construed a particular tariff or clarified its underlying factors," or if the tariff's language is used in its ordinary sense. *Yellow Freight*, 762 F.2d at 740; *see Western Pacific*, 352 U.S. at 69, 77 S.Ct. at 167; *United States v. Atchison, Topeka & Santa Fe Railway*, 725 F.2d 469, 470 (9th Cir.1980) (*Atchison*).

Farley does not argue that the Class 70 tariff is unreasonable on its face or that its language is not used in the ordinary sense. Rather, it contends that the tariff is unreasonable as applied to the facts of this case.

We must determine if the Commission has primary jurisdiction over a claim that a tariff would be unreasonable as applied to a particular party, even if that party admits the tariff is unambiguous and reasonable on its face.

Farley contends that *Union Pacific Railroad v. Bay Area Shippers Consolidating Association, Inc.*, 594 F.2d 1291 (9th Cir.1979) (per curiam) (*Union Pacific*), is dispositive of this issue. We disagree. In *Union Pacific,* the railway sought to enforce a penalty tariff because the shipper failed to file a manifest within the prescribed time. The shipper contended that the tariff itself was excessive and unenforceable. *See id.* at 1294. Farley, on the other hand, has admitted that the Class 70 tariff is reasonable on its face. Furthermore, in *Union Pacific* we emphasized that the tariff's reasonableness depended on questions of cost allocation, *id.,* which *Western Pacific* requires that the Commission first determine. *Western Pacific,* 352 U.S. at 69, 77 S.Ct. at 167. Because Farley does not challenge the tariff itself, we need not address issues of cost allocation in applying the Class 70 tariff to this case.

There is language in *Western Pacific* that suggests that some questions of a tariff's unreasonableness as applied should be referred to the Commission. *Id.* at 68–69, 77 S.Ct. at 167–68. But the Supreme Court limited the Commission's primary jurisdiction over such claims. The Court pointed out that

> in many instances construing the tariff does not call for examination of the underlying cost-allocation which went into the making of the tariff in the first instance. We say merely that where, as here, the problem of cost-allocation is relevant, and where therefore the questions of construction and reasonableness are so intertwined that the same factors are determinative on both issues, then it is the Commission which must first pass on them.

*Id.* at 69, 77 S.Ct. at 168. This is not such a case.

We also do not agree with Farley's interpretation of *Western Transportation Co. v. Wilson & Co.*, 682 F.2d 1227 (7th Cir. 1982) (*Western Transportation*). In that case, there is no indication that the court or Wilson considered the tariff to be reasonable on its face. In fact, the opposite is true; the court suggested that Wilson challenge the reasonableness of the tariff's notation requirement, and we interpret the opinion's "as applied" language in that context. *See id.* at 1231–32.

■ Therefore, the district court did not err in declining to stay Santa Fe's motion for summary judgment and in not referring the matter to the Commission.

IV

Farley also contends that even if the Commission does not have primary jurisdiction over this claim, the district court erred in granting summary judgment because there were issues of material fact that should be determined by a jury. We review this issue de novo. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). In reviewing a grant of summary judgment, "[t]he facts must be viewed and inferences must be drawn in the manner most favorable to the non-moving party." *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983). Summary judgment is not proper unless "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Id.*

In support of its contention that summary judgment was inappropriate, Farley first argues that a Class 70 tariff is an award of punitive damages that requires a finding of oppression or bad faith, and that such findings should be reserved for a jury. Farley, however, cites no cases for the proposition that the tariff should be treated like punitive damages, and the tariff itself does not require such a finding. We conclude that the imposition of the Class 70 tariff is not dependent on proof of bad faith, *cf. Atchison,* 725 F.2d at 470, and, therefore, that there was no issue of material fact for a jury.

Farley also contends that there is a substantial factual question as to whether Santa Fe or the Bureau ever made a proper demand for payment based on the Class 70 tariff, and if so, when, and in what amount. The Class 70 tariff, however, is not triggered by a demand for payment but rather by a demand for inspection that is denied. The Bureau made its initial request for inspection in late 1979, and when that request was refused, continued to make requests. Farley did not inform the Bureau of its willingness to comply until late 1983. Indeed, Farley did not complete disclosure of the requested records to Santa Fe pursuant to discovery in the antitrust action until July 1982, almost three years after the Bureau made its initial request. We agree with the district court that although the tariff does not specify when a shipper must comply with an audit request, a reasonable time for compliance is implied. *Cf. A.M.R. Enterprises, Inc. v. United Postal Savings Association*, 567 F.2d 1277, 1281 (5th Cir.1978); *Condakes v. Southern Pacific Co.*, 295 F.Supp. 119, 120 (D.Mass. 1968). Based on the record before us, we conclude that there was no question of fact as to whether the failure to comply with the audit request for a period of almost four years exceeds a reasonable time for compliance.

The tariff and any penalty provisions attached thereto are controlling; Farley's knowledge of the duly published Class 70 tariff provision is presumed. *See Farley Terminal Co. v. Atchison, Topeka & Santa Fe Railway*, 522 F.2d 1095, 1098–99 (9th Cir.) (per curiam), *cert. denied*, 423 U.S. 996, 96 S.Ct. 423, 46 L.Ed.2d 370 (1975) (*Farley Terminal Co.*). Farley contends that if Santa Fe had given timely notice that it would seek Class 70 tariff charges, access to the requested documents could have been granted and the offense would have been nullified. No act of the carrier, however, can change or modify the provisions of a tariff. *Milne Lumber Co. v. New York Central Railroad*, 167 I.C.C. 743, 782 (1930). Furthermore, a threat of imposition of a Class 70 tariff charge should not be required to cajole a shipper into permitting inspection of freight records. A demand for inspection by a carrier or carrier's agent is all the tariff requires. After reviewing Farley's contentions, we do not find that Farley has presented any issues of material fact.

V

Farley's final argument is that the district court's application of the Class 70 tariff was arbitrary and unjust as a matter of law. This is a question of law reviewable de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

A duly published tariff is binding on the parties and has the force of law. *Farley Terminal Co.*, 522 F.2d at 1098. A tariff must be applied equally to all since any deviation from the lawful rate would involve either undue preferences or unjust discrimination. *Western Union Telegraph Co. v. Esteve Brothers & Co.*, 256 U.S. 566, 573, 41 S.Ct. 584, 587, 65 L.Ed. 1094 (1921). Application of a published tariff is required regardless of the intentions of the parties or the equities existing between carrier and shipper. *Western Transportation*, 682 F.2d at 1231; *National Van Lines, Inc. v. United States*, 355 F.2d 326, 331 (7th Cir. 1966).

Farley nevertheless contends that the Class 70 tariff should not be applied because Santa Fe was not prejudiced by Farley's decision to produce the shipping records directly to Santa Fe pursuant to court-supervised discovery rather than indirectly to its agent. In making that argument, Farley relies on *Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d 723 (9th Cir.1954), which states that a tariff should not "be read or applied in a manner which would lead to an unjust or absurd conclusion." *Id.* at 727. That precept, however, is a general rule of contract construction and is inapplicable unless a tariff is ambiguous. *See Western Transportation*, 682 F.2d at 1231. If a tariff is not ambiguous, the parties are bound by its terms, and aids

to construction are irrelevant. *Id.* In this case, the tariff is straightforward and unambiguous, and the district court was correct in declining to determine whether its application was arbitrary or unjust.

Farley has failed to provide Santa Fe with timely access to relevant shipping records as required by the tariff. We see no reason to disturb the district court's decision.

AFFIRMED.