DURA SYSTEMS, INC., A Pennsylvania Business Corporation, Appellant in 89–3005,

v.

ROTHBURY INVESTMENTS, LTD., A Canadian Corporation, Appellant in 89–3023.

Nos. 89–3005, 89–3023.

United States Court of Appeals, Third Circuit.

Argued July 17, 1989.

Decided Sept. 19, 1989.

Rehearing and Rehearing In Banc Denied Oct. 13, 1989.

As Amended Oct. 16, 1989.

John D. Eddy (argued), Eddy & Oster-man, Pittsburgh, Pa., for appellant-cross-appellee Dura Systems, Inc.

Hunter A. McGeary, Jr. (argued) and Charles W. Kenrick, Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for appellee-cross-appellant Rothbury Investments, Ltd.

Before STAPLETON, SCIRICA and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Plaintiff Dura Systems, Inc., the law firm of Eddy & Osterman and its members Thomas R. Eddy, John D. Eddy and Thomas G. Eddy, individually, appeal the district court's imposition of Rule 11 sanctions. We will reverse the order of the district court.

### I.

This is an appeal from an order of the United States district court awarding $12,-275.00 in attorneys fees and expenses to the defendant Rothbury Investments, Ltd. under Rule 11 of the Federal Rules of Civil Procedure.

The underlying lawsuit from which these Rule 11 proceedings developed arose from a written franchising agreement between Dura Systems and Rothbury Investments dated January 29, 1984. The franchising agreement granted Dura Systems the right to act as exclusive agent for Rothbury to sell franchises in the United States for the manufacture and distribution of certain patented concrete products developed by Rothbury, and established performance standards to be met by Dura Systems. On April 23, 1986, Rothbury attempted to terminate the franchising agreement on the grounds that Dura Systems had failed to meet the performance standards. In response, Dura Systems sued for a declaratory judgment establishing its right to act as exclusive franchising agent and to enjoin Rothbury from granting to any third party the right to manufacture, distribute, or sell the products. The district court granted summary judgment for Rothbury and this court affirmed. *Dura Systems, Inc. v. Rothbury Investments Ltd.*, 866 F.2d 1409 (3d Cir.1988).

Rothbury Investments, Ltd. is a Canadian corporation which owns certain United States patents and trademarks on a concrete retaining wall system invented by Angelo and Anthony Risi, Canadian citizens. These patents and trademarks were originally applied for and transferred to Rothbury by another Canadian corporation, Risi Stone, Ltd. Both Rothbury and Risi Stone are owned and managed by the Risis. Seeking to market and distribute the Risi retaining wall system in the United States, Rothbury entered into the franchising agreement described above with Thomas R. Eddy, an attorney, Kenneth Dehus, a former client of the Eddy's law firm, Eddy & Osterman, and the Risis. Pursuant to the franchising agreement, the individuals agreed to form another corporation (Dura Systems) to act as Rothbury's exclusive agent for franchising the right to manufac-

ture and sell Risi products in the United States.

Dura Systems was thereafter incorporated on October 22, 1984 in Pennsylvania by Thomas R. Eddy. The shares of Dura Systems were to be owned one-third by the Risis, one-third by Dehus, and one-third by Thomas R. Eddy. On June 10, 1985, Thomas R. Eddy, as permitted by Pennsylvania business corporation law "elected" a board of directors for Dura Systems, which included himself and his two sons, John D. Eddy, and Thomas G. Eddy, all members of the law firm of Eddy & Osterman. The board then met and elected officers: Thomas R. Eddy, President; Kenneth Dehus, Vice–President; Angelo Risi, Vice–President; and John D. Eddy, Secretary.

In the meantime, differences arose between the franchisee and Rothbury Investments concerning the performance of the terms of the franchising agreement, ultimately resulting in the litigation referred to above. As a consequence, on May 13, 1987, the shareholders of Dura Systems met at the request of the Risis and Dehus. At the meeting, the shareholders voted, in this sequence, to (1) amend the by-laws; (2) dismiss the law firm of Eddy & Osterman as legal counsel to the corporation and hire Randal E. McCamey, Esq. as counsel to the corporation; (3) withdraw the lawsuit against Rothbury concerning the franchising agreement; (4) elect a new Board of Directors; (5) elect new officers; and (6) dissolve the corporation. As a result, McCamey filed his appearance as counsel for Dura Systems and moved to dismiss the lawsuit against Rothbury with prejudice. Thomas R. Eddy, as minority shareholder, objected to the May 13 shareholder resolutions on the grounds that they were ultra vires and unlawful. Despite the May 13 resolutions, Eddy & Osterman continued to prosecute the law suit against Rothbury by filing pleadings in the name of the corporation. Consequently, Rothbury has been obliged to retain and compensate counsel to defend the suit.

Rothbury filed its motion for Rule 11 sanctions the day after the May 13 shareholders' meeting, alleging that:

(1) neither Dura Systems nor the law firm of Eddy & Osterman has "legal authority to institute and prosecute suit in the above matter;" and (2) Eddy & Osterman "knew or should have known that no valid basis existed for instituting a lawsuit, but nevertheless persisted in maintaining the above action without a well-grounded basis in law or fact."

After considering both parties memoranda, the district court granted Rothbury's motion for Rule 11 sanctions on October 11, 1988, pending Rothbury's submission of an accounting of attorney's fees and expenses. On January 3, 1989, the court amended its earlier order to include Plaintiff Dura Systems, the law firm of Eddy & Osterman, and attorneys Thomas R. Eddy, John D. Eddy, and Thomas G. Eddy as the parties subject to the order, and granted Rothbury $12,250.00 in attorney's fees and expenses. Dura Systems appeals the award of counsel fees and expenses under Rule 11. Rothbury cross-appeals, seeking an increase in the amount of the awarded attorney's fees and expenses to $30,325.00.

## II.

Before we can address the merits of the district court's decision to grant Rule 11 sanctions in this case, we must first determine whether Eddy & Osterman, and the Eddy brothers individually, may be considered parties to this appeal because they were not specifically named in the notice of appeal. The content of a notice of appeal is prescribed by Fed.R.App.P. 3(c) of the Federal Rules of Appellate Procedure:

(c) Content of the Notice of Appeal

The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.... An appeal shall not be dismissed for informality of form or title of the notice of appeal.

Fed.R.App.P 3(c). Compliance with Fed.R.App.P. 3(c) is a jurisdictional prerequisite. Failure to file a notice of appeal in accordance with the specificity requirement of Fed.R.App.P. 3(c) presents a jurisdictional

bar to the appeal. *Torres v. Oakland Scavenger Co.*, —— U.S. ——, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); *Kowaleski v. Dep't of Labor*, 879 F.2d 1173, 1175 (3d Cir.1989).

Dura Systems was the only party named in the notice of appeal from the district court's order imposing Rule 11 sanctions, an order which specifically named Dura Systems, the law firm of Eddy & Osterman, and the Eddys individually, as the parties subject to the order to pay attorney's fees and expenses. Appellees contend that this discrepancy violates the requirements of Fed.R.App.P. 3(c).

■ The Eddys and the law firm make several arguments in response.[1] First, they contend that the requirements of Fed.R.App.P. 3(c) may be deemed satisfied by a Consent Order of January 31, 1989, entered by this court granting stay of the district court judgment pending appeal, in which the judgment was secured by the accounts receivable of the law firm of Eddy & Osterman. The Consent Order specifically names, in addition to Dura Systems, the law firm of Eddy & Osterman and Thomas R. Eddy, John D. Eddy and Thomas G. Eddy, individually, as parties against whom Rothbury may confess judgment in the event that this court affirms the award of attorney's fees, and was entered within the period required for timely notice of appeal under Fed.R.App.P. 4(a)(1). Second, they claim that they could reasonably have read Fed.R.App.P. 3(c) to have required only that the named "party or parties" to the underlying action be included in the notice of appeal. This interpretation would have led them to conclude that only Dura Systems was properly named in the notice of appeal, since neither Eddy & Osterman nor the Eddys individually were originally named "parties" to the underlying action.

The sufficiency requirements of a notice of appeal under Fed.R.App.P. 3(c) were recently addressed by the United States Supreme Court in *Torres v. Oakland Scavenger Co.*, —— U.S. ——, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), in which the petitioner, as one of sixteen plaintiffs seeking to appeal the district court's dismissal of the complaint, was not named in the notice of appeal because of a clerical error. The Court granted certiorari "to resolve a conflict in the Circuits over whether a failure to file a notice of appeal in accordance with the specificity requirement of Fed.R.App.P. 3(c) presents a jurisdictional bar to the appeal."[2]

In formulating its holding, the Court made clear that Rules 3 and 4 of the Federal Rules of Appellate Procedure create a jurisdictional threshold, and that the requirements of the two rules may not be abrogated for "good cause shown" under Fed.R.App.P. 2.[3] *Id.* 108 S.Ct. at 2409. Moreover, the fact that Rule 3 excuses "informality of form or title" in a notice of appeal does not forgive compliance with the Rule's requirements: "[p]ermitting imperfect but substantial compliance with a technical requirement is not the same as waiving the requirement altogether as a

---

**1.** On July 11, 1989, Dura Systems, Eddy & Osterman, and the Eddys moved this court for leave to amend the Notice of Appeal to name the omitted parties. We will deny the motion under Fed.R.App.P. 26(b), which explicitly prohibits the court from enlarging the time for filing a notice of appeal. *See Carter v. Rafferty*, 826 F.2d 1299, 1304 (3d Cir.1987) (quoting *West v. Keve*, 721 F.2d 91, 95 (3d Cir.1983)) ("Where the litigant fails to file a timely notice of appeal within the prescribed period, the litigant loses the right to an appeal on the merits of the predicate controversy."); *cert. denied*, 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988).

**2.** 108 S.Ct. at 2407 & n. 1 (comparing *Farley Transportation Co. v. Santa Fe Trail Transportation Co.*, 778 F.2d 1365, 1368–70 (9th Cir.1985)

(failure to specify party to appeal is jurisdictional bar); *Covington v. Allsbrook*, 636 F.2d 63, 64 (4th Cir.1980) (same); *Life Time Doors, Inc. v. Walled Lake Door Co.*, 505 F.2d 1165, 1168 (6th Cir.1974) (same) with *Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173, 1177 (5th Cir.1986) (appeal by party not named in notice of appeal is permitted in limited circumstances); *Harrison v. United States*, 715 F.2d 1311, 1312–13 (8th Cir. 1983) (same); *Williams v. Frey*, 551 F.2d 932, 934 n. 1 (3rd Cir.1977) (same)).

**3.** Under Fed.R.App.P. 2, for good cause shown, "a court of appeals may, except as otherwise provided in Rule 26(b), suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction."

jurisdictional threshold." *Id.* at 2408; *see also Kowaleski,* 879 F.2d at 1176 (citing *Allen Archery, Inc. v. Precision Shooting Equip., Inc.,* 857 F.2d 1176, 1177 (7th Cir. 1988)) (court must insist on "punctilious, literal, and exact compliance with the requirement in Fed.R.App.P. 3(c) that the notice of appeal 'shall specify the party or parties taking the appeal' "). Although the *Torres* Court mandated compliance with the specificity requirement of Fed.R.App.P. 3(c), it recognized that

> the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits. Thus, if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.

*Id.* at 2408–09 (citing *Houston v. Lack,* —— U.S. ——, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). This approach mirrors the practice sanctioned in the Advisory Committee Notes to the 1979 amendment to Fed.R. App.P. 3(c), which cites with approval cases holding that, "so long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with." Fed. R.App.R. 3(c) advisory committee's note (citing *Cobb v. Lewis,* 488 F.2d 41 (5th Cir.1974); *Holley v. Capps,* 468 F.2d 1366 (5th Cir.1972)).

■ In this case, we hold that the Consent Order serves as the "functional equivalent" of what the rule requires. The Consent Order was filed within the time for filing an appeal under Fed.R.App.P. 4, and, by naming the law firm and the Eddys as the parties securing the district court judgment pending appeal, served to notify the court and the opposing parties of their intention to appeal. Given these factors, the Consent Order satisfies the underlying purpose of the rule of "provid[ing] notice both to the opposition and to the court of the identity of the appellant or appellants," [4] *Torres,* 108 S.Ct. at 2409, and thus serves the same function as would a notice of appeal executed in the more technically proper manner. Because the Consent Order specifies "the party or parties taking the appeal," it conforms to this court's requirement in *Kowaleski* that Fed.R. App.P. 3(c) be complied with in a "punctilious, literal, and exact" manner. *Kowaleski,* 879 F.2d at 1176. Moreover, by upholding the Consent Order as sufficient notice of appeal, we follow the Court's directive to construe the rule "liberally," and to avoid a construction that would allow "mere technicalities" to bar consideration of a case on the merits. *Torres,* 108 S.Ct. at 2408; *see also Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962).

Finally, because we have concluded that the Consent Order operates as an effective notice of appeal, we need not address the Eddy defendants' additional argument that, because they were not named parties to the underlying action, they could reasonably have assumed that they did not fall within the wording of the rule requiring "the party or parties" to be named in the notice of appeal. *Cf. Torres,* 108 S.Ct. at 2409 (jurisdictional requirements may not be waived, even for "good cause shown" under Rule 2).

### III.

■ We now turn to the merits of the district court's decision to impose Rule 11 sanctions in this case. "Our review of the imposition or denial of sanctions under Rule 11 is limited to determining whether the district court has abused its discretion." *Teamsters Local Union No. 430 v. Cement Exp., Inc.,* 841 F.2d 66, 68 (3d Cir.1988); *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 485 (3d Cir.1987). Our court has said that "the question is not whether the reviewing court would have applied the sanction, but whether the district court abused its discretion in doing so." *Snow Machines, Inc. v.*

---

**4.** Appellees conceded at oral argument that, in light of the Consent Order, they were aware that the law firm and the Eddys intended to appeal the district court's order.

*Hedco, Inc.,* 838 F.2d 718, 724 (3d Cir.1988); *Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985). Under the circumstances in this case, we find an abuse of discretion.

## A.

Rule 11 provides, in part:

[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11. Rule 11 sanctions may be imposed " 'in the exceptional circumstance' where the claim or motion is patently unmeritorious or frivolous." *Doering v. Union County Bd. of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988) (citing *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987)). Although the Rule imposes a duty of reasonable inquiry as to both facts and law,[5] it is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed.R. Civ.P. 11 (advisory committee notes). The standard is one of "reasonableness under the circumstances."[6] *Id.; Gaiardo,* 835 F.2d at 482. The court must evaluate the signer's conduct "by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted," an evaluation which should depend on a variety of factors, including "whether the pleading, motion, or other paper was based on a plausible view of the law." Fed.R. Civ.P. 11 (advisory committee note). In *Gaiardo,* we cautioned that "[l]itigants misuse the Rule when sanctions are brought against a party whose only sin was being on the unsuccessful side of a ruling or judgment." 835 F.2d at 483; *see also Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540–41 (9th Cir.1986) (district court may not impose sanctions simply because party's nonfrivolous argument is found by the district court to be unjustified).

Eddy & Osterman argue that their conduct is not properly subject to Rule 11 sanctions because the firm's decision to disregard the May 13 shareholder resolutions was based on a plausible view of the law. Citing § 1401 of the Pennsylvania Business Corporation Law[7] and *In re Penn Central Securities Litigation,* 367 F.Supp. 1158 (E.D.Pa.1973), the Eddy defendants claim that the May 13 shareholder resolutions were not binding on the corporation because, under Pennsylvania law, only a corporation's board of directors may manage the affairs of the corporation. Under this view, the shareholder resolutions of May 13 dismissing former counsel, retaining new counsel, and authorizing dismissal of the suit were actions taken *ultra vires,* a view which the law firm claims is

---

5. *See Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 385, 98 L.Ed.2d 306 (1987) ("Rule 11 ..., which requires pleadings to be based on a good-faith belief, formed after reasonable inquiry, that they are well grounded in fact, adequately protects defendants from frivolous allegations.").

6. Rule 11 was amended in 1983. The "reasonableness standard" of the amended rule "is more stringent than the original good faith requirement because it represents an objective, rather than a subjective, standard." Wright, Miller & Kane, 5 *Federal Practice and Procedure* § 1333 at 177 (Supp.1987).

7. Section 1401 states that "[t]he business and affairs of every business corporation shall be managed by a board of directors...." 15 Pa. Stat.Ann. § 1401 (Purdon Supp.1988).

supported in both statutory and case law and which is not "unmeritorious or frivolous." *See Doering*, 857 F.2d at 194. Because the board of directors of Dura Systems did not initiate or authorize the removal of Eddy & Osterman as counsel to the corporation, the firm claims that it had reasonable grounds to believe that it had continuing authority to pursue the law suit against Rothbury.

The district court found the firm's legal theory "dubious." *Dura Systems v. Rothbury*, No. 86–2621, mem. op. at 6 (W.D.Pa. October 11, 1988). "What concerns us, for the purposes of this motion, is the critical and indisputable fact that the shareholders, whether voting as shareholders (as they did) or as a board of directors (as Eddy & Osterman allege they should have done), decided by a two-thirds vote that this lawsuit, which was nominally brought on behalf of the corporation, should be dismissed." Mem. op. at 5–6. Because the district court concluded that the law suit against Rothbury, initiated and maintained by Eddy & Osterman, was unauthorized and "apparently unfounded in law and fact," the court held that "Eddy & Osterman ... abused the litigative process to such a degree that the imposition of sanctions [was] warranted." *Id.* at 24.

The district court also noted, and Rothbury stresses in its brief, that the law firm's decision may have been motivated by self-interest. The district court concluded that, despite the firm's ostensible representation of Dura Systems, it pursued the law suit to protect the interests of Thomas Eddy, minority shareholder in Dura Systems, and/or of his two sons, who were members of the Dura Systems board. In addition, Rothbury accuses the law firm of exercising deliberate and intentional control over the Dura Systems Corporation to the exclusion of the majority shareholders, claiming that (1) Thomas R. Eddy incorporated Dura Systems and named himself and his two sons directors without notice to the other shareholders; (2) the Eddy family board of directors ran Dura Systems to the complete exclusion of the other shareholders; and (3) the Eddy Board filed the complaint against Rothbury with the knowledge that the majority of shareholders had neither authorized the suit nor had been notified of its filing. Based on these allegations, Rothbury submits that Rule 11 sanctions were not only justified, it cross-appeals on the grounds that sanctions should have been imposed as of the date of the filing of the complaint against Rothbury.

### B.

■ We cannot find that the Eddy defendants' conduct, either in filing the original complaint against Rothbury or in pursuing that cause of action on behalf of Dura Systems after the May 13 shareholders' meeting, justified the imposition of Rule 11 sanctions. Rather, we are constrained to conclude that the Eddy defendants' conduct, albeit arguably self-serving, was based on a "plausible view of the law" that is not "patently unmeritorious or frivolous."

First, with respect to the initial filing of the complaint, the Eddy-installed Board of Directors, as the lawfully appointed board under 15 Pa.Stat.Ann. § 1210 (Purdon Supp.1988),[8] ostensibly had the authority to file suit. Indeed, under the Dura Systems By–Laws, "[t]he business and affairs of the corporations shall be managed by its Board of Directors[,]" which "may exercise all

---

8. Section 1210 of the Pennsylvania Business Corporation Law states:

§ 1210 Organization Meeting

After the filing of the articles of incorporation, an organization meeting of the board of directors named in the articles *or of the incorporators if no directors are named in the articles,* shall be held, either within or without this Commonwealth, at the call of a majority of directors or incorporators for the purpose of adopting by-laws, which they shall have the authority to do at such meeting, *of electing directors if no directors are named in the articles,* and in the case of a meeting of the board of directors, of electing officers, and of transacting such other business as may come before the meeting. The directors or incorporators calling the meeting shall give at least five days notice of the time and place of the meeting.

15 Pa.Stat.Ann. § 1210 (Purdon Supp.1988) (emphasis added).

such powers of the corporation and do all such lawful acts as are not by statute or by the Articles of Incorporation, or by these By–Laws directed or required to be exercised or done by the shareholders." App. 152a–53a. *See also* 15 Pa.Stat.Ann. § 1401 (Purdon Supp.1988) ("The business and affairs of every business corporation shall be managed by the board of directors....").

In contrast, Rothbury cites no authority for the proposition that the Dura Systems Board lacked the authority to institute the underlying suit. Thus, Rothbury has not demonstrated on the cross-appeal that the Eddy defendants' initiation of suit against it, on behalf of Dura Systems, was based on an implausible view of the law or was unreasonable under the circumstances.[9] Therefore, we find no justification for imposing Rule 11 sanctions as of the date of the filing of the complaint.

Further, we are unable to conclude that the Eddy defendants' perpetuation of the underlying law suit after the May 13 meeting constituted conduct so lacking in legal basis as to be "patently unmeritorious or frivolous." The Eddy defendants claim that the shareholder resolutions dismissing former counsel, retaining new counsel and authorizing dismissal of the suit were not binding on the corporation because they violated § 1401 of the Pennsylvania Business Corporation Law, which mandates that "[t]he business and affairs of the corporation shall be managed by the corporation...."[10] *See* note 7 *supra.* In support, they cite *In re Penn Central Securities Litigation,* 367 F.Supp. 1158 (E.D.Pa.1973), for the proposition that the board of directors, rather than the shareholders, control the conduct of litigation on behalf of the corporation. While this case more generally addresses, *inter alia,* the requirement that a shareholder seeking to press a claim on behalf of the company must first

demand that the directors take the action desired, it also contains language that the directors, and not the shareholders, ordinarily conduct litigation on the corporation's behalf. 367 F.Supp. at 1163.

Whether we or the district court would decide in favor of the Eddy defendants is not relevant to the issue before us.[11] Even if the Eddys' legal arguments may be tenuous, the district court need only determine whether their positions are "patently unmeritorious or frivolous," *see Doering,* 857 F.2d at 194. It appears to us that in this case, the district court evaluated the Eddy defendants' position in terms of its potential for success on the merits. Under the circumstances in this case, we believe this constitutes an abuse of discretion.

We will reverse the judgment of the district court. Each side to bear its own costs.

---

9. If the Eddy family board of directors was motivated by self-interest in its management of Dura Systems, then presumably the shareholders may have a remedy.

10. As we have noted, John Eddy made the same objections at the May 13, 1987 shareholders meeting. At that meeting, the newly elected directors did not vote on these matters.

11. The merits of the underlying case regarding the franchising agreement have been considered by this court on appeal. *Dura Systems v. Rothbury Investments Inc.,* 866 F.2d 1409 (3d Cir. 1988). In the opinion, we assumed *arguendo* that the law firm had the authority to bring the lawsuit on behalf of Dura Systems.