**AMELIA HINES JOSEPH, by Her Guardian Ad Litem Frank Padilla**

v.

**ERNEST N. EASTMAN, Appellant**

No. 14,936

United States Court of Appeals

Third Circuit

Argued January 25, 1965

Decided April 15, 1965

*See, also, 344 F.2d 9*

RUSSELL B. JOHNSON, St. Croix, Virgin Islands, *for appellant*

JOHN D. MARSH (YOUNG, ISHERWOOD & MARSH), St Croix, Virgin Islands, *for appellee*

Before MARIS, McLAUGHLIN and FREEDMAN, *Circuit Judges*

MARIS, *Circuit Judge*

This is a suit brought on February 20, 1963, by the guardian ad litem of the plaintiff, Amelia Hines Joseph, a married woman then 85 years of age, for the cancellation of a deed conveying to the defendant, Ernest N. Eastman, her undivided interest in real estate in St. Croix owned by her husband and herself, which deed had been executed by the plaintiff without the knowledge of her husband on April 13, 1960. The complaint alleged that the plaintiff had been in ill health since 1951 and was at the time of making the deed incompetent to manage her affairs. The answer was a general denial. After a full trial the district court found that Mrs. Joseph was not mentally competent at the time she executed the deed in question to understand the nature of her act or realize the consequences thereof and that Eastman exerted undue influence over her in persuading her to execute the deed, and accordingly entered a judgment annulling the deed and directing the Recorder of Deeds to cancel it of record. This appeal by Eastman followed.

The evidence of 13 witnesses was received. It was sharply conflicting. The plaintiff relies upon the testimony of Mrs. Joseph's husband, Alexander Joseph and a third cousin of his, Georgeanna Peterson, who was living across the road from the Joseph home from December, 1959 to July 1960, and who had known Mrs. Joseph all her life. Joseph testified that he and Mrs. Joseph had purchased in 1932 a homestead, Unit No. 7 of Whim Estate, on which they had lived ever since that time, and the remaining unsold portion of which is the land involved in the present controversy. They worked the land together for the raising of sugarcane until 1948 when Mrs. Joseph became physically unable to work

in the fields and Joseph secured other employment. Mrs. Joseph's health got worse as time went on and during the last five years (1959–1963) Joseph said that "her head goes and comes." She became confused, putting food on or under the bed, moving things about the house, having increasing difficulty in cooking properly, and frequently failing to respond to his questions. On the other hand Joseph testified at a later point that Mrs. Joseph's head was all right in 1960 before the deed was executed.

Mrs. Peterson, who had been very well acquainted with Mrs. Joseph all her life, but who had been away from St. Croix in New York for 14 years, had returned in 1959 and lived with Mrs. Ralph P. Johnson, whose home was across the road from Mr. and Mrs. Joseph's home, from December 1959 until July 1960 when she moved to town. Mrs. Peterson testified that upon her return to St. Croix she noticed that Mrs. Joseph "had started to get pretty forgetful." Her performance of her household duties was not up to her usual standard. In shopping on Saturdays she would bring home from town a whole lot of one kind of thing and other important things that she was accustomed to buy she wouldn't bring. Whereas she had always been a woman with very good appearance who always looked nice when she went out, Mrs. Peterson observed that she had started dropping back. In the home she used to be a very spic and span housekeeper but it got so that things weren't just right. She was not her natural self, as she used to be, but started acting like a child, obeying instructions like a child. Mrs. Peterson testified that she observed this condition commencing in February or March 1960 and that Mrs. Joseph gradually became more childish as time went on.

Opposed to this evidence the defendant relies on the testimony of eight other witnesses. Almeric L. Christian, Esq., the lawyer who drew the deed under attack, testified that

Eastman, after making an appointment, brought Mrs. Joseph to his office, who told him that she wanted to convey the land to Eastman, "the boy" who had lived with her as a child, but that her husband would not sign the deed. Christian had no question as to her competency. Eastman testified that he lived with Mrs. Joseph, then Mrs. Hines, for eight or nine years after he came to St. Croix from Barbados in 1913, that she had acted as a step-mother to him and he had always been close to her, calling on her frequently and providing her with food and coal when she needed it. In 1959 or 1960 when Joseph was ill and he and Mrs. Joseph were visiting him in the hospital Mrs. Joseph told her husband to give Eastman a piece of land and Joseph then agreed to do so but afterward decided not to do it. Thereafter Mrs. Joseph asked Eastman to get her a lawyer and he then arranged to take her to Mr. Christian. He was present at the notary's office when Mrs. Joseph executed and acknowledged the deed after the notary questioned her about it.

Felix A. Francis, a notary public, testified that Eastman brought Mrs. Joseph to his office on April 13, 1960, that he read the deed to Mrs. Joseph who said she was fully acquainted with it and wanted "to give this thing to Eastman because he is the only family I have." She then made her mark on the deed and he took her acknowledgment and signed as a witness. Herbert Ferris testified that he had known Mrs. Joseph for two or three years, that he accompanied Mrs. Joseph and Eastman to the notary's office who asked her if it was her desire to give Eastman land. She said it was, that she had known him from a boy, he had always been by her side, so she was willing to give him land. Ferris signed the deed as a witness. Mrs. Joseph appeared to him to know what she was doing and her conduct was no different from what he had observed during the preceding two or three years.

Lieutenant Arthur N. Brown of the Virgin Islands Police Force, was introduced to Mrs. Joseph by Eastman late in 1959 or early in 1960. Speaking of Eastman she said to Brown "This is my son." She appeared to Brown to know what she was doing at that time. The deposition of Dr. Elena I. Stevenson, a Government physician in St. Croix, was offered in evidence. Dr. Stevenson deposed that she had treated Mrs. Joseph in the Frederiksted Clinic two or three times in late 1959 or early 1960 for physical ailments, and that in her opinion Mrs. Joseph was capable of making her decision as to whom she should give her real property or her money or who should take care of her. Eastman brought her to the hospital and was most attentive to her. Frank Padilla, Esq., the guardian ad litem and a Frederiksted lawyer, testified that in November 1959 at Joseph's request he prepared a deed to be signed by Mr. & Mrs. Joseph and that he and a notary went out with it to the Joseph home since Mrs. Joseph was bedridden at the time. He found Mrs. Joseph evasive and he did not think she had the capacity to make a deed that day. So he and the notary left and returned on November 11th when she was lucid, knew who she was, how much she was selling the land for, who the buyer was, and that she wanted to sell to him. The deed was explained to her by the notary and she executed it by mark. Ralph P. Johnson, a near neighbor, testified that Joseph stopped Mrs. Joseph from visiting them after the argument about the deed started, and that at that time she was competent, in his opinion, to take care of her property. Later on her mental condition was sometimes good, sometimes off.

On this sharply conflicting testimony the district court found, as we have said, that Mrs. Joseph was not mentally competent, at the time she executed the deed to Eastman, to understand the nature of her act or realize its consequences. We cannot hold the finding of the district

206

court in this regard to be clearly erroneous as we would be required by Rule 52(a) of the Federal Rules of Civil Procedure to do if we were to set the finding aside. For there is substantial evidence to support the finding even though there is some evidence negating it and the judge of the district court had the opportunity, which we do not have, to appraise all the evidence in the light of the demeanor of the witnesses and the way in which they gave their testimony.

We come then to the contention that the district court erred in finding that Eastman had exerted undue influence over Mrs. Joseph in connection with the execution of the deed. It is settled that a deed may be set aside in case of mental weakness, which standing alone would not justify equitable relief, when the execution of the deed is attended with inequitable incidents. Wilkie v. Sassen, 1904, 123 Iowa 421, 99 N.W. 124, 125. Thus, inadequacy of consideration, coupled with such a degree of mental weakness as would justify the inference that advantage has been taken of that weakness, will furnish sufficient ground for equitable interference. Allore v. Jewell, 1877, 94 U.S. 506, 24 L.Ed. 260. And where the donor of a gift is aged and physically infirm and a relationship of trust and confidence existed between the donor and the donee, the gift is presumed to have been induced by fraud or indue influence and the burden shifts to the donee to show affirmatively and by clear and convincing proof that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary, and well understood. Slack v. Rees, 1904, 66 N.J. 447, 59 A. 466; Post v. Hagan, 1907, 71 N.J. Eq. 234, 65 A. 1026; In re Adams' Estate, 1908, 220 Pa. 531, 69 A. 989; Floyd v. Floyd, 7 Cir. 1926, 11 F.2d 841; Thaw v. Thaw, 2 Cir. 1928, 27 F.2d 729; Kellahin v. Henderson, 5 Cir. 1936, 81 F.2d 128; Stieber v. Vanderlip, 1939, 136 Neb. 862, 287 N.W. 773.

■■ The district court in the present case concluded as a matter of law that the circumstances of Mrs. Joseph's age and infirmity, together with the complete lack of consideration for the conveyance, raised a presumption of undue influence exerted by Eastman which he had failed to overcome, and that Mrs. Joseph was at the time of the execution of the conveyance mentally incompetent to appreciate the nature of her act and the consequence thereof but acted under the undue influence of Eastman. While the affirmative evidence in this case in support of the finding that Eastman had actually exerted undue influence over Mrs. Joseph is minimal, it is clear from Eastman's own testimony that there was a very close relationship between them, comparable to the relationship of mother and son, and that Mrs. Joseph was dependent upon him for care and personal attention. Although there is no suggestion of lack of bona fides on the part of the persons who assisted in the execution of the deed, all arrangements with whom were made by Eastman, it is the fact that Mrs. Joseph had no outside or independent advice as to the effect of the conveyance. In that situation the court did not err in holding that a presumption of undue influence on the part of Eastman arose. Nor can we say that the court erred in concluding that Eastman had failed to overcome the presumption by positive evidence negating the presence of undue influence in the transaction. The presumption of undue influence, thus enrebutted, was accordingly a sufficient basis for the court's finding that Eastman did exert undue influence over Mrs. Joseph in persuading her to execute the deed in question to him. It follows that the district court did not err in annulling the deed.

The judgment of the district court will be affirmed.