**Gasper Alvira CRUZ, Appellant in No. 89–3827,**

v.

**Luz Esther MELENDEZ, Appellant in No. 89–3828.**

Nos. 89–3827 & 89–3828.

United States Court of Appeals, Third Circuit.

Argued April 24, 1990.

Decided May 3, 1990.

Allan A. Christian (Argued), Law Offices of Allan A. Christian, Frederiksted, St. Croix, U.S. Virgin Islands, for Gasper Alvira Cruz, appellant in No. 89–3827.

Brian L. Masony (Argued), Christiansted, St. Croix, U.S. Virgin Islands, for Luz Esther Melendez, appellant in No. 89–3828.

Before SLOVITER, STAPLETON and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Plaintiffs, Gasper Alvira Cruz, Jr., Teresa Bravo, Mary Berrios, Irene Alvira, Humberto Alvira, Jr. and Mariela Alvira, filed this action in the Territorial Court of the Virgin Islands to set aside a deed executed by Bonifacia Rucci on October 29, 1981, transferring all of her real property to her daughter, defendant Luz Esther Melendez. Plaintiffs Bravo, Berrios and Irene Alvira were children of Rucci, who died on September 6, 1982; Cruz was the grandchild of Rucci; Mariela and Humberto Alvira were Rucci's great-grandchildren. In their complaint, plaintiffs alleged that Rucci had been unduly influenced by Melendez in the conveyance of certain real property to the defendant. Trial was held on March 4 and 5, 1985.

Evidence was presented at trial that during the latter years of her life, Rucci suffered from diabetes and arthritis, and that in 1978 she was diagnosed as having breast cancer. She travelled to Puerto Rico for medical treatment, which included a mastectomy and chemotherapy. Thereafter, Rucci returned to her home in St. Croix and continued chemotherapy treatment.

In March 1981, Rucci rented out her properties and moved in with her daughter, Luz Melendez. Melendez testified that Rucci moved because of her state of deteriorating health, exacerbated by the death of Rucci's grandson the previous month. Melendez attended to her mother's daily needs while the two shared a home.

Throughout her illness, Rucci received medical assistance from the government. In July 1981, Rucci's eligibility for this assistance was called into question because of her ownership of property and the rental income which it was producing. Melendez testified that her sister, Mary Berrios, told her mother to transfer ownership of the property to all of her children to insure that the government assistance would continue, but that Rucci refused, insisting that she wanted Melendez "to have a larger share." App. at 283.

In October 1981, Rucci returned to Puerto Rico for a medical examination and it was determined that the cancer had reoccurred and spread to her skeletal system. She again received chemotherapy and other related treatment, and returned to St. Croix. Melendez testified that Rucci, anxious to arrange her final affairs, decided to deed her all of her real property. Melendez stated that she resisted being the sole grantee of the property, fearing familial discord, but her mother remained insistent. Therefore, Melendez proposed that she would give the remaining family members money from her own personal savings as an exchange, and Rucci agreed, except that she protested any gift to her grandson, Cruz, whom she characterized as a "bad son" (to her son) and whom she intended to exclude from her benevolence.

At the request of her mother, Melendez telephoned attorney Frank Padilla, Rucci's lawyer, to obtain assistance in the deed transfer. Padilla came to Melendez's home on October 26, 1981, accompanied by an English/Spanish translator, Aurea Stamatakis, whose presence was necessary because Rucci spoke no English. Padilla discussed with Rucci, in the presence of Stamatakis, the proposed transfer and its possible ramifications. Padilla testified he fully explained to Rucci the terms of the new deed, reminded her that the instrument

would exclude her other children, and informed her of alternative options available, such as the creation of a life estate. Rucci told him that she understood that Melendez would receive the property to the exclusion of the remainder of the family, stated that this arrangement was what she wanted, and told him that she had given instructions to Melendez regarding the care of the remaining family members. Padilla excluded Melendez from the room "to be sure there [was] no coercion." App. at 190. He specifically asked Rucci if she was doing this freely. *Id.* Rucci then signed the deed by placing an "X" in the appropriate space.

Thereafter, in December 1981, Melendez gave Mary Berrios a check for $12,000; Irene Alvira a check for $11,800 and $200 cash; and Teresa Bravo a check for $7,000.[1] Additionally, Melendez gave $2,000 in savings bonds each to Iraide Alvira and Betzaida Alvira, two of Rucci's grandchildren. Pursuant to Rucci's wish, nothing was given to Cruz.

Based on the testimony presented and his credibility determinations in favor of Melendez in the face of conflicting evidence, the trial judge entered judgment in favor of defendant. The court held that the presumption of undue influence, enunciated in *Joseph v. Eastman*, 344 F.2d 9, 12 (3d Cir.1965), did not arise in this case. The court found that although Rucci was advanced in age and physically infirm at the time of the execution of the deed, and that a relationship of trust had existed between Rucci and Melendez, the evidence did not establish that Melendez exerted influence over Rucci. The court held that the *Joseph* presumption did not arise because Rucci was mentally competent at the time she executed the deed, to the extent that she fully understood the nature of her act and realized the consequences thereof,

and because consideration had been given for the transfer of the property in the form of Melendez's gifts to her relatives.

On appeal, the Appellate Division of the District Court of the Virgin Islands vacated the judgment of the trial court. The court held that the trial court had misinterpreted *Joseph*. It held that because Rucci was aged and infirm at the time of the deed's execution, and because she had maintained a relationship of trust with Melendez, a rebuttable presumption of undue influence had arisen as a matter of law.[2] The case was remanded to the trial court for a determination whether the presumption had been rebutted by clear and convincing evidence.

On remand, the trial court made supplemental findings of fact and conclusions of law. The court found that no deception was practiced and no undue influence was exerted in the transfer of the deed. The court found the evidence established that Rucci had handled her own financial matters and that she had been a strong-willed person, in particular resisting Berrios' attempt to have her transfer the properties in all names. The court relied on the testimony of Dr. Garcia, who saw Rucci regularly, that her illness had not impaired Rucci's mental abilities. The court further found that the deed had been executed in a fair, open and well-understood manner, relying on Padilla's testimony that he had explained the deed and the consequences to Rucci before conducting the deed transfer. The court also referred to the testimony of Justino Pimental, a friend and confidant of Rucci, who stated that Rucci had told him of her conveyance plan two years before her death, a year before the actual transfer. After concluding that the presumption of undue influence had been rebutted by clear and convincing evidence, the trial court entered judgment for the defendant.

---

1. Bravo owed Melendez $5,000 at the time of the gift. This sum was deducted from the $12,000 figure Melendez originally intended to give Bravo, which explains the resulting sum of $7,000.

2. It relied, *inter alia*, on this court's opinion in *Francois v. Francois*, 599 F.2d 1286 (3d Cir. 1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 679,

62 L.Ed.2d 653 (1980), where we construed *Joseph* to hold that once the trial court found a confidential relationship (in *Francois* between husband and wife), "the burden of proof shift[ed] to the person seeking to uphold the transaction to demonstrate the absence of undue influence." *Id.* at 1292.

Plaintiffs once again appealed to the Appellate Division which affirmed, holding that the findings, credibility determinations, and conclusions were not clearly erroneous. This appeal followed. This court has jurisdiction to entertain the appeal pursuant to 28 U.S.C. § 1291.

## II.

The initial issue before this court is a jurisdictional one, which requires us to determine which appellants are properly before us. The notice of appeal designates the prospective appellants only as "Gasper Alvira Cruz, et al." Although the notice was filed on or about November 30, 1989, and hence within thirty days of the final order entered on November 18, 1989, the Clerk of this Court, by letter dated January 5, 1990, notified the plaintiffs' counsel that jurisdiction of this court was conferred upon Cruz only. The Clerk informed Cruz that because the time for filing an appeal from the Appellate Division's order had expired by then, additional appellants could only be added by filing a proper motion in the district court.

On January 29, 1990, Cruz filed a motion to amend the notice of appeal in the Appellate Division, in which he substituted the proper names of the remaining plaintiffs for the previous "et al." label. In an order dated February 16, 1990, the Appellate Division denied Cruz's motion on the ground that it lacked jurisdiction over the case because a notice of appeal had been filed. Cruz then moved in this court for leave to incorporate within the original notice of appeal the names of Gasper Alvira Cruz, Jr., Teresa Bravo, Mary Berrios, Irene Alvira, Humberto Alvira, Jr. and Mariela Alvira as appellants.

Rule 3(c) of the Federal Rules of Appellate Procedure states, in relevant part, that the notice of appeal "shall specify the party or parties taking the appeal." The Supreme Court has recently held that the use of the term "et al." in a notice of appeal does not sufficiently identify the parties as required by this rule. *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct.

2405, 101 L.Ed.2d 285 (1988). In so holding, the Court reasoned:

> The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants. The use of the phrase "et al.," which literally means "and others," utterly fails to provide such notice to either intended recipient.

*Id.* at 318, 108 S.Ct. at 2409. The Court concluded that the failure to include the name of the petitioner in the original notice of appeal constituted a jurisdictional bar to the appeal, and that, as a result, the Court of Appeals never had jurisdiction to consider the case. *Id.* at 317–18, 108 S.Ct. at 2409.

In *Kowaleski v. Director, OWCP,* 879 F.2d 1173 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990), this court, applying *Torres,* raised *sua sponte* the issue of whether it had jurisdiction over an appeal when it discovered that the appellant's caption named no real party in interest. Assuming that the appellant would move to insert the name of the true party in interest in place of the erroneous caption, this Court stated:

> As the Court recognized in *Torres,* a motion for leave to amend a notice of appeal to include unnamed parties must be filed within the time limits for filing a notice of appeal set forth in Rule 4. Failure to timely file a motion to amend deprives the court of jurisdiction over the unnamed parties.

*Id.* at 1177. We stated that in that case a motion to amend would have been untimely, and that we lacked jurisdiction to consider the appeal. *Id.*

In light of the foregoing authorities, we conclude that this court lacks jurisdiction in this appeal over those plaintiffs designated only under the "et al." label. Arguably, the district court would have had jurisdiction to grant the motion under Rule 4(a)(5) to extend the time to file a notice of appeal for those plaintiffs who were not specified in the original notice because the failure to specify them in the notice of appeal meant that this court had no jurisdiction over

them. We need not decide that issue because the motion to amend, first filed in the Appellate Division on January 29, 1990, was clearly untimely, having been filed both after the thirty days prescribed in Fed.R.App.P. 4(a)(1) for a notice of appeal and after the thirty-day period allowed for any extension under Rule 4(a)(5).

We reject plaintiffs' argument that the appearance form filed by counsel on January 12, 1990 satisfies the requirements of Rule 3(c) because counsel named all plaintiffs individually, rather than using the "et al." designation. First, this argument is inconsistent with the Court's strict interpretation of Rule 3(c) found in *Torres.* Second, the appearance form itself was filed after the thirty-day time limit for a notice of appeal and without the finding by a district court of excusable neglect or good cause as required by Fed.R.App.P. 4(a)(5) to support a thirty-day extension. *A fortiori,* the motion to amend the caption filed even later in this court cannot serve to resurrect an untimely appeal. We conclude that the defective notice acts as a jurisdictional bar to appeal for the unnamed plaintiffs in this case, and this court maintains jurisdiction solely over the one named appellant, Gasper Alvira Cruz.

### III.

Cruz argues that the defendant's evidence relied on by the trial court in finding that the presumption of undue influence was overcome did not rise to the clear and convincing level required under *Joseph v. Eastman,* 344 F.2d 9, 12 (3d Cir.1965). Cruz argues that Melendez's assertion that Rucci cooked her own meals and paid her own bills is inconsistent with Melendez's testimony that she took care of her mother's finances in October 1981 and prepared Rucci's meals in 1981. However, Rucci was hospitalized during October 1981, and Melendez's testimony that, "In 1981, I will do the meals," App. at 34, does not necessarily signify that Rucci did not take care of her own meals during much of 1981.

Cruz argues that the trial court could not properly rely on Dr. Garcia's testimony that Rucci suffered no general deterioration in her mental faculties during her final years because Garcia did not see her during the month of October 1981, the month in which the property was transferred. Dr. Garcia ordinarily saw Rucci every other month, but did not see her in the period from June 1981 to December 1981. However, he would have noticed mental deterioration thereafter, if there was any. Moreover, Rucci's oncologist, Dr. Juan Javier, testified on deposition that neither Rucci's illness nor her medication caused any degree of mental incompetence or weakness. Dr. Javier examined Rucci in October 1981, immediately prior to the execution of the deed.

Cruz also attempts to undermine the credibility of Justino Pimental, who testified that Rucci had discussed the property transfer with him, because he could not remember in which year Rucci died. However, it was for the trial court, not this court, to determine whether this confusion was so serious as to render the witness' testimony unreliable. In short, Cruz's attacks on the credibility of the defense testimony do not convince us that the evidence failed to meet the clear and convincing standard.

Cruz next argues that the testimony of Attorney Padilla should be discounted because he acted improperly in that he was hired and paid by Melendez, and he drafted the deed before discussing the transfer with Rucci. There is no basis in the record for these attacks on Padilla's integrity. The record discloses that he had been Rucci's attorney for many years. Although the lack of independent advice obtained by an unduly influenced party is a factor to be considered in determining whether there was undue influence, *see Francois v. Francois,* 599 F.2d 1286, 1292–93 (3d Cir.1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 679, 62 L.Ed.2d 653 (1980), the trial court was entitled to credit Padilla's testimony that he gave Rucci complete information and that he would not have gone forward with the transaction had he not been convinced that Rucci was firm in her position.

After reviewing the trial record, the trial court's initial findings of fact and conclusions of law, its supplemental findings and conclusions, and the arguments advanced by both parties in this case, we agree with the Appellate Division that the trial court's Supplemental Findings of Fact are supported by the evidence and cannot be denominated as clearly erroneous. In light of our conclusion that the court did not err in holding that Melendez presented clear and convincing evidence sufficient to rebut the presumption of undue influence, we need not reach appellee Melendez's contention, presented in her cross-appeal, that the Appellate Division erred when it initially remanded after holding that a rebuttable presumption of undue influence arose in this case as a matter of law.

### IV.

For the reasons set forth above, we will affirm the order of the Appellate Division.[3]

---

**3.** In light of this result, we note that in this case the failure to include all plaintiffs in the Notice of Appeal does not affect the outcome, because we have considered and rejected all of their contentions in the context of Cruz's appeal.