**MASQUERADE NOVELTY,
INC., Appellant,**

v.

**UNIQUE INDUSTRIES, INC., and
Everett Novak, an Individual.**

**No. 90–1090.**

United States Court of Appeals,
Third Circuit.

Argued June 20, 1990.

Decided Aug. 27, 1990.

**664**

Arnold I. Kalman (argued), John J. Monsees, and Geri Ann Benedetto, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for appellees.

Walter Z. Steinman (argued), Philadelphia, Pa. and Gerard F. Dunne (argued), Wyatt, Gerber, Burke & Badie, New York City, for appellant.

Before STAPLETON, GREENBERG and WEIS, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This is an appeal from a grant of summary judgment in favor of defendants Unique Industries, Inc. and Everett Novak (collectively "Unique") in this copyright infringement action brought by Masquerade Novelty, Inc. The district court held that the relevant products made by Masquerade, masks configured to resemble the noses of a pig, elephant, and a parrot respectively, were "useful articles" under 17 U.S.C. § 101 and were not copyrightable because their sculptural elements could not be separated from their utilitarian purpose of allowing a person to create humor by masquerading in an animal's nose. Thus, it entered judgment for Unique on Masquerade's complaint. We find that because the only utilitarian function of the nose masks is in their portrayal of animal noses, the district court erred in concluding that they were not copyrightable. Thus, we reverse the grant of summary judgment for Unique and remand for further proceedings on the issue of infringement.

### I.

■ As a threshold issue, we must consider whether we have appellate jurisdiction. We raised this issue *sua sponte* because the notice of appeal filed by Masquerade Novelty states that "Walter Z. Steinman, Attorney for Plaintiff in the above captioned matter, hereby appeals" from the order granting Unique's motion for summary judgment. By the time we raised this issue, we realized that the notice of appeal was intended to be filed on behalf of Masquerade, since counsel for Masquerade had already filed its merits briefs *on behalf of Masquerade* urging reversal of the district court's order granting summary judgment against it. It is also clear that Unique believed that Masquerade was the appellant, since its brief on appeal leaves no doubt as to its understanding that Masquerade was the appellant. This was understandable given that the order appealed from adversely affected only Masquerade, the only plaintiff in this case, and did not run against Mr. Steinman or any of the other attorneys representing Masquerade. Furthermore, the notice of appeal implied that Mr. Steinman was acting in a representative capacity, i.e., as "Attorney for Plaintiff". However, because the notice of appeal could possibly be read as indicating that Mr. Steinman, rather than his client, was appealing, we asked the parties to address the question of whether the notice of appeal failed to satisfy the requirements of Federal Rule of Appellate Procedure 3(c), which requires that a notice of appeal "specify the party or parties taking the appeal." Failure to file a timely notice of appeal complying with Rule 3(c)'s specificity requirement erects a jurisdictional bar to appeal. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988); *Kowaleski v. Director, OWCP, U.S. Dept. of Labor,* 879 F.2d 1173, 1176 (3d Cir.1989). Not surprisingly, Unique took the position that Masquerade had not satisfied this requirement, and filed a motion to dismiss the appeal for lack of jurisdiction.

At oral argument in this case, counsel for Masquerade drew our attention to two other documents filed with this court by Masquerade within the thirty day appeal period set forth in Federal Rule of Appellate Procedure 4(a)(1), that clarify any ambiguity about the identity of the appellant created by the original notice of appeal. These documents specify that Masquerade

is the appellant in this appeal, and that Walter Steinman is merely one of its counsel. Masquerade contends that, when considered along with the original notice of appeal, these documents, an attorney appearance form and a civil appeal information statement, served to provide Unique and this court with unambiguous and timely notice of the identity of the appellant and of the district court judgment appealed from, and constitute the functional equivalent of a notice of appeal.

We believe that acceptance of Masquerade's argument is dictated by this court's prior decision in *Dura Systems, Inc. v. Rothbury Investments, Ltd.*, 886 F.2d 551 (3d Cir.1989). In that case, the district court had entered an order under Federal Rule of Civil Procedure 11 assessing counsel fees against a corporation, Dura Systems, and a law firm and two lawyers purporting to represent it. The notice of appeal named the corporation only. The appellees argued that the failure of the notice of appeal to name the law firm and the two lawyers barred their appeal. This court found that the law firm and two lawyers could pursue their appeal because Rule 3(c) could be:

> deemed satisfied by a Consent Order ... entered by this court granting stay of the district court judgment pending appeal, in which the judgment was secured by the accounts receivable of the law firm of Eddy & Osterman. The Consent Order specifically names, in addition to Dura Systems, the law firm of Eddy & Osterman, and Thomas R. Eddy, John D. Eddy, Thomas G. Eddy, individually, as parties against whom Rothbury may confess judgment in the event that this court affirms the award of attorney's fees, and was entered within the period required for timely notice of appeal under Fed.R.App.P. 4(a)(1).

*Id.* at 554.

We noted in *Dura Systems* that the Supreme Court had set forth a strict jurisdictional rule in *Torres* but had also stressed that jurisdiction could be found if a litigant's action was functionally equivalent to what Rule 3(c) required. Thus, we stated:

> that the Consent Order serves as the "functional equivalent" of what the rule requires. The Consent Order was filed within the time for filing an appeal under Fed.R.App.P. 4, and, by naming the law firm and the Eddys as the parties securing the district court judgment pending appeal, served to notify the court and the opposing parties of their intention to appeal. Given these factors, the Consent Order satisfies the underlying purpose of the rule of "provid[ing] notice both to the opposition and to the court of the identity of the appellant or appellants, *Torres*," 108 S.Ct. at 2409, and thus serves the same function as would a notice of appeal executed in the more technically proper manner. Because the Consent Order specifies "the party or parties taking the appeal, it conforms to this Court's requirement in *Kowaleski* that Fed.R.App.P. 3(c) be complied with in a "punctilious, literal, and exact" manner. *Kowaleski*, 879 F.2d at 1176.

*Id.* at 555 (footnote omitted); *see also In re Bertoli*, 812 F.2d 136, 138 (3d Cir.1987) (motion for certification of an interlocutory appeal provides an effective notice under Rule 3(c) where the motion provided timely notice of the appellant, the judgment to be appealed, and the court to which the appeal would be taken). *But see, Allen Archery, Inc. v. Precision Shooting Equipment, Inc.*, 857 F.2d 1176 (7th Cir.1988) ("The appellant must be named in the notice of appeal; naming him in ... collateral documents such as a supersedeas bond, will not do.").

In our view, *Dura Systems* stands for the proposition that a party will be deemed to have complied with Rule 3(c) if it has, within the time provided to file an appeal, filed documents that "specify the party or parties taking the appeal; ... the judgment, order or part thereof appealed from; and ... the court to which the appeal is taken." Fed.R.App.P. 3(c). We do not read *Dura Systems* as a case turning on the nature of the documents filed within the time period for appeal, i.e., whether the document is a consent order or an attorney appearance form, but on the contents of the documents, i.e., whether they contain

the information required by Rule 3(c). Finding that the documents referenced by Masquerade do, when considered along with the original notice of appeal, satisfy the requirements of Rule 3(c), we believe *Dura Systems* requires us to deny Unique's motion to dismiss.[1] By considering these documents in determining whether a sufficient notice of appeal under Rule 3(c) was filed, "we follow the [Supreme] Court's directive to construe the rule 'liberally,' and to avoid a construction that would allow 'mere technicalities' to bar consideration of a case on the merits." *Dura Systems*, 886 F.2d at 555 (quoting *Torres*, 487 U.S. at 316–17, 108 S.Ct. at 2408–09).[2]

## II.

Recognizing that the copyrightability of Masquerade's nose masks was a threshold issue in the case, the parties submitted this issue to the district court on cross-motions for summary judgment to be decided on the basis of stipulated facts.

Both Masquerade and Unique sell nose masks. Masquerade alleges that nose masks sold by Unique infringe upon copyrights Masquerade possesses on pig, elephant, and parrot nose masks. In each of the applications leading to the issuance of a certificate of copyright registration for these products to Masquerade, Masquerade supplied no incorrect information to the Copyright Office, and informed it that the work being registered was a nose mask.[3] The photographic exhibits to the applications displayed the masks on a flat surface rather than on a human face.

The parties agreed that the pig, elephant, and parrot nose masks for which Masquerade holds certificates of copyright registration "have the utility to be worn over the nose of a person *to simulate the nose of the respective animal[s]*." App. at 26 (emphasis added). Unique has not suggested that the masks are useful for any reason unrelated to their appearance.[4]

Presented with these undisputed facts, the district court granted summary judgment for Unique, ruling that Masquerade's nose masks were not copyrightable because they were useful articles whose sculptural

**1.** Given this disposition, we need not consider Masquerade's contention that its first notice of appeal alone satisfied Rule 3(c) because Masquerade was named in the caption, not as appellant, but as plaintiff. Courts have taken various positions as to the ability of a caption to help a notice of appeal satisfy Rule 3(c). *Compare Bigby v. City of Chicago*, 871 F.2d 54, 56 (7th Cir.1989) (the fact that two plaintiffs were specifically named in the caption did not satisfy Rule 3(c) where the body of the caption indicated only that 'Plaintiffs and Intervening Plaintiffs hereby appeal') *with Rosario–Torres v. Hernandez–Colon*, 889 F.2d 314 (1st Cir.1989) (presence of a plaintiff's name in the caption coupled with a statement in the body of the notice of appeal that 'plaintiffs hereby appeal' satisfies Rule 3(c) as to her, but not as to plaintiffs not specifically named in either the caption or the body of the notice) and *Minority Employees v. Tennessee Department of Employment Security, Inc.*, 901 F.2d 1327, 1336 (6th Cir.1990) (indicating that specifically naming a party solely in the caption could satisfy Rule 3(c) but "only where the caption is not inconsistent with body of the notice ... [a]ny ambiguity will defeat the notice").

**2.** We realize that our recent decision in *Cruz v. Melendez*, 902 F.2d 232 (3d Cir.1990), rejected an attempt by several parties to rely on an attorney appearance form to cure a deficiency in a notice of appeal that failed to designate that the parties were appealing. In so ruling, we expressed the view that allowing this form to serve as an adequate notice of appeal under Rule 3(c) "is inconsistent with this court's strict interpretation of Rule 3(c) found in *Torres.*" 902 F.2d at 236. However, we also noted that the appearance form "itself was filed after the thirty-day time limit for a notice of appeal and without the finding by a district court of excusable neglect or good cause as required by Fed.R. App. 4(a)(5) to support a thirty-day extension." *Id.*

To the extent that *Cruz* can be read as being inconsistent with the result we reach today, we note that the attorney appearance form in *Cruz* was not filed within the time period provided in Rule 4(a)(1), and further that as between *Dura Systems* and the later case of *Cruz*, we are bound to follow the earlier precedent. *See, e.g. O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982).

**3.** The certificates of registration were issued to Cesar S.A. of Samur, France, who assigned them to Masquerade, who had commissioned Cesar to create them as works for hire.

**4.** Unique does not assert, for example, that the nose masks are intended to protect the nose in some way.

elements could not be separated from their utilitarian function of allowing people to humorously masquerade as humans with an animal feature. The district court acknowledged that under 17 U.S.C. § 410(c) registration certificates constitute prima facie evidence of the validity of the copyrights. However, the district court found that Masquerade's registration applications did not adequately inform the Copyright Office that the masks were to be worn by humans, and that this omission rendered § 410(c) inapplicable.

### III.

On appeal, Masquerade disputes both of these rulings. Our review of the question of whether Masquerade was entitled to a statutory presumption that its copyrights were valid is plenary, involving as it does the legal implications flowing from undisputed facts. Similarly, our review of the district court's grant of summary judgment for Unique is plenary, and we will affirm only if, after reading the stipulated factual record in the light most favorable to Masquerade, it appears that Masquerade's nose masks were, as a matter of law, not copyrightable.

### A.

The initial dispute in this case involves whether Masquerade was entitled to the presumption contained in 17 U.S.C. § 410(c), which provides that:

In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court.

The legislative history of this provision describes the purpose of this provision as follows:

The principle that a certificate represents prima facie evidence of copyright validity has been established in a long line of court decisions and is a sound one. It is

true that, unlike a patent claim, a claim to copyright is not examined for basic validity before a certificate is issued. On the other hand, endowing a copyright claimant who has obtained a certificate with a rebuttable presumption of the validity of the copyright does not deprive the defendant in an infringement suit of any rights; it merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underlie the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 157, *reprinted in* 1976 U.S.Code. Cong. & Ad.News 5659, at 5773; *see also Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985).

"The elements of a copyright infringement action are (1) ownership of a valid copyright and (2) copying by the alleged infringer." *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989). Unique argues that the district court's grant of summary judgment may be affirmed on the ground that Masquerade does not hold valid copyrights on its nose masks because it failed to submit to the Copyright Office a picture of each nose mask being worn by a person. It contends that if the Copyright Office had known that Masquerade's products were meant to be worn by humans, then the Office would not have issued copyright registrations for them. Unique acknowledges, however, that it has no evidence tending to show that Masquerade made knowing misrepresentations to the Copyright Office in its registration applications.

■ It has been consistently held that a plaintiff's knowing failure to advise the Copyright Office of facts which might have led to the rejection of a registration application constitutes grounds for holding the registration invalid and incapable of supporting an infringement action. *Id.* at 456; *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir.1984); *see* M. Nimmer & D. Nimmer, Nimmer on Copyright, § 7.20, at

7–198 (1990). Unique seeks to have us extend this case law to situations where an applicant inadvertently fails to advise the Copyright Office of material facts relevant to whether registration of an article is appropriate.

■ The district court held that Masquerade had omitted material facts from its registrations applications because, without intending to conceal the nose masks' functions, it failed to "present the article[s] to the Copyright Office in a manner sufficient to demonstrate [their] function as a costume ..." App. at 37. The district court reached this conclusion because the photographs accompanying the applications did not portray the masks being worn by human models. We are uncertain whether the district court determined that this supposed failure in ·itself constituted an alternative ground for dismissing Masquerade's infringement action, or whether the district court believed that this failure merely deprived Masquerade of the statutory presumption of § 410(c) and that Masquerade had not shown that the nose masks were copyrightable material.

As we analyze this appeal it can be resolved without deciding whether an inadvertent omission of material information from a submission to the Copyright Office renders the copyright unenforceable, deprives the copyright owner of its § 410(c) presumption, or has no legal effect.[5] Masquerade's applications to the Copyright Office· specifically identified the articles for which registration was sought as "nose masks." We thus fail to see how the Copyright Office could have been misled as to their purpose.[6] As the Copyright Office had the information necessary to determine whether to register the nose masks, Masquerade was entitled to pursue its infringement action and to enjoy the benefits of 17 U.S.C. § 410(c).

### B.

■ The presumption flowing from § 410(c) is not an insurmountable one, and merely shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985). The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright. Where, for example, the issue is whether the copyrighted article is "original," the presumption will not be overcome

5. Unique's view that an inadvertent omission from a registration application will render a plaintiff's copyright incapable of supporting an infringement action has not gained acceptance with the courts. *See Eckes v. Card Prices Update*, 736 F.2d 859, 861–862 (2d Cir.1984) (an innocent or inadvertent omission from a registration application will not invalidate the copyright or render it incapable of supporting an infringement action); *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir.1956) (same). It may be that the correct approach in situations where there has been a material, but inadvertent omission, is to deprive the plaintiff of the benefits of § 410(c) and to require him to establish the copyrightability of the articles he claims are being infringed. *See* M. Nimmer & D. Nimmer, Nimmer on Copyright, § 7.20, at 7–197 & 198 (1990) ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration incapable of supporting an infringement action. This assumes, of course, that the work would have been eligible for copyright had a correct statement of facts been contained in the registration application.")

6. The photographs of the masks contained in the district court record show the masks on a flat surface and clearly display the elastic band that allows a person to wear the mask. As the record does not indicate whether these were the photographs submitted to the Copyright Office, we do not rely upon them to support our conclusion as to the adequacy of Masquerade's application. It is sufficient to conclude that the Copyright Office could reasonably be expected to know that an article explicitly described as a nose mask was meant to be worn.

Thus, this case is unlike the recent case of *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452 (2d Cir.1989), in which an applicant received copyright registration certificates for Halloween costumes by describing them as 'soft sculptures' and by omitting the word 'costume' totally from its application. The court held that this was calculated to hide the fact that the articles for which a copyright was sought were costumes, a category of articles that are not copyrightable because of their utility as clothing. In this case, however, the term "nose mask" accurately characterized the articles for which copyright registration was sought by Masquerade.

unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality. Nimmer on Copyright, *supra*, § 12.11[A], at 12–83–85. Where, as is the case here, the issue is whether particular articles with certain undisputed characteristics are copyrightable, the defendant need not introduce evidence but instead must show that the Copyright Office erroneously applied the copyright laws in registering plaintiff's articles. *Williams Electronics v. Artic International, Inc.*, 685 F.2d 870, 871–872 (3d Cir.1982).[7] In this case, Unique attempted to meet this burden by arguing that Masquerade's nose masks are non-copyrightable because they have a utility that is not separable from their sculptural design, i.e. they have utility in that they can be used to allow a person to humorously appear to have an animal feature.

The utility of the nose masks is crucial to determining whether they are copyrightable, because the copyright laws are a reflection of Congress' desire to protect and encourage artistic creativity, while at the same time ensuring the wide availability of useful designs. The tension between these two goals is *de minimis* when the item sought to be copyrighted is a "pure" work of art like a painting or sculpture. Thus, if Masquerade's animal noses were meant to be displayed as sculptures of animal noses it is clear that they would be copyrightable as "pictorial, graphic and sculptural" works. 17 U.S.C. § 102(a)(5). Such works include "two-dimensional and three dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models." 17 U.S.C. § 101.

Of course, just because a sculpture is incorporated into an article that functions as other than a pure sculpture does not mean that the sculptural part of the article is not copyrightable. For example, in the case of *Mazer v. Stein*, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), the Supreme Court held that statuettes of human figures which were designed to serve as lamp bases were copyrightable. But more difficult questions of copyrightability arise in those cases where the "artistic" element of a product cannot be separated from its non-appearance related utility. It may be easy to grant copyright protection to a statuette used as a lamp base without impairing the wide availability of lamps. However, if an artist claimed copyright protection for his design of the shape of an automobile, for example, and the shape of the car made it more aerodynamic, then allowing protection for the artist's design might limit the availability of cars with this improvement in aerodynamics. This is so because it may be difficult to separate the design's appearance, from its ability to improve automobile performance. Protecting the shape via the copyright laws might thus afford the artist a *de facto* patent on an industrial innovation that would otherwise not satisfy the more rigorous requirements necessary to obtain a patent, as opposed to a copyright.

To address this problem, Congress attempted to draw as "clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design," H.R.Rep. No. 94–1476, *supra*, at 55, *reprinted in* 1976 U.S.Code Cong. & Ad. News at 5668, by restricting the definition of sculptural works eligible for copyright

---

7. In cases like this where the only issue is the copyrightability of a particular article that it is incontestably original, the § 410(c) presumption is of little real force. This is so in this case. Absent an indication from the Copyright Office as to why it registered the nose masks, or the existence of a controlling administrative regulation or interpretation of 17 U.S.C. § 101, the only deference we can give to the Copyright Office's expertise in questions of copyright law, *Norris Industries v. Internat'l Telephone & Telegraph Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (the Copyright Office's expertise in interpreting the copyright laws and applying them to the facts of copyright applications should be given deference), and the only meaning we can give to § 410(c) is to place the burden on Unique to show that the articles are not copyrightable. *See Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir.1985) (where the only question is whether certain articles are copyrightable, the court is in as good a position as the Copyright Office to consider this question).

protection under 17 U.S.C. § 102(a)(5) in the following manner:

Such works shall include works of artistic craftmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as a pictorial, graphic or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

But this limitation on the protection granted to sculptural works is itself limited in a crucial respect:

A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.

17 U.S.C. § 101.

The applicability of this "useful article" exception to Masquerade's nose masks is the critical issue on this appeal. Unique argues that because the nose masks have the utilitarian function of allowing a human to masquerade wearing an animal nose, they are useful articles under 17 U.S.C. § 101. Since the masks' sculptural elements cannot be distinguished from their utilitarian function, Unique contends, the masks are not sculptural works for purposes of 17 U.S.C. § 102(a)(5). The district court agreed with this argument and based its grant of summary judgment for Unique on this ground:

[I]t is clear to the court that [the nose masks'] sculptural elements [are] not separable from their utilitarian element.... While there may be 'art' in the humorous configuration of the mask[s] to resemble animal shapes, the configuration is also key to [their] utility: the wearer does not don the product on Halloween to display art; one wears a fake animal nose to participate in the day's tradition of going about in cos-

tume. We find the animal shapes to be conceptually inseparable from the product's utilitarian purpose of creating humor.

App. at 34–35. If we were forced to separate the nose masks' functional aspects from their sculptural aspects, we admit that this would be a difficult if not impossible task. Courts have twisted themselves into knots trying to create a test to effectively ascertain whether the artistic aspects of a useful article can be identified separately from and exist independently of the article's utilitarian function.[8]

■ However, this analysis is only required where an article is first determined to be a "useful" one under § 101. Congress has made plain its view that a product is only a "useful article" if it has "an intrinsic utilitarian function that is not merely to portray the appearance of the article." 17 U.S.C. § 101. If a sculptural work is not a "useful article" because its sole "utilitarian function ... is ... to portray the appearance of the article," then it remains copyrightable under 17 U.S.C. § 102(a)(5) and a court need not analyze whether its utilitarian function is separable from the work's sculptural elements.

■ We believe the district court erred in considering nose masks as "useful articles" for purposes of § 101, and in therefore proceeding to conclude that they were not entitled to copyright protection because their utility could not be separated from their sculptural elements. This error, and the error of Unique's position, flows from regarding as a utilitarian function the effect, humor, produced by the only utility the nose masks have, which is in their portrayal of animal noses. Unlike a design incorporated in a belt, see *Kieselstein–Cord v. Accessories By Pearl, Inc.*, 632 F.2d 989 (2d Cir.1980), which holds up the wearer's pants, or even a costume, which may serve, aside from its appearance, to clothe the wearer, nose masks have no

8. See, e.g., the views expressed in the majority and dissenting opinions in *Brandir Internat'l, Inc. v. Cascade Pacific Lumber Co.*, 834 F.2d 1142 (2d Cir.1987) *and Carol Barnhart, Inc. v. Economy Cover Corp.*, 773 F.2d 411 (2d Cir.1985).

utility that does not derive from their appearance.

That nose masks are meant to be worn by humans to evoke laughter does not distinguish them from clearly copyrightable works of art like paintings. When worn by a human being, a nose mask may evoke chuckles and guffaws from onlookers. When hung on a wall, a painting may evoke a myriad of human emotions, but we would not say that the painting is not copyrightable because its artistic elements could not be separated from the emotional effect its creator hoped it would have on persons viewing it. The utilitarian nature of an animal nose mask or a painting of the crucifixion of Jesus Christ inheres solely in its appearance, regardless of the fact that the nose mask's appearance is intended to evoke mirth and the painting's appearance a feeling of religious reverence. Thus, Masquerade's nose masks are not "useful articles" for purposes of 17 U.S.C. § 101, and are copyrightable as sculptural works. 17 U.S.C. § 102(a)(5).

Our conclusion in this regard is supported by the case of *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970 (6th Cir. 1983), in which the copyrightability of a toy airplane was disputed. The district court had concluded that the airplane was not copyrightable because toys are useful articles since they permit a child to dream and to let his or her imagination soar. The court of appeals reversed the district court, stating:

> To be a "useful article," the item must have "an intrinsic utilitarian function that is not merely to portray the appearance of the article." And a toy airplane is merely a model which portrays a real airplane. To be sure, a toy airplane is to be played with and enjoyed, but a painting of an airplane is to be played with and enjoyed. Other than the portrayal of a real airplane, a toy airplane, like a painting, has no intrinsic utilitarian function. . . .

> Indeed, under the district court's reasoning, virtually any "pictorial, graphic, and sculptural work" would not be copyright-

able as a "useful article." A painting of Lindbergh's Spirit of St. Louis invites the viewer to "dream and to let his or her imagination soar," and would not be copyrightable under the district court's approach. But the statute clearly intends to protect copyright protection to paintings. The district court would have the "useful article" exception swallow the general rule, and its rationale is incorrect.

*Id.* at 973; *see also* Nimmer on Copyright, § 2.08[B], at 2–93 n. 107 (expressing approval of *Gay Toys* ).

As the parties' motions for summary judgment submitted only the issue of copyrightability to the district court, and discovery on the issue of actual infringement has not even begun, we may not, as Unique urges, affirm on the basis that there has been no actual infringement. We acknowledge that Masquerade may have difficulty in demonstrating infringement on remand, given that their nose masks and the nose masks of Unique are relatively straightforward representations of animal noses. We are confident, however, that the district court will, in examining this issue, be cognizant of the Supreme Court's teaching that copyrights protect only expressions of ideas and not ideas themselves. *Mazer v. Stein*, 347 U.S. at 217, 74 S.Ct. at 470. By holding that Masquerade's nose masks are copyrightable, we do not intimate that it has the exclusive right to make nose masks representing pig, elephant and parrot noses. *Cf. Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 249, 23 S.Ct. 298, 299, 47 L.Ed. 460 (1903) ("But even if [a poster is] drawn from . . . life, that fact would not deprive [it] of protection. . . . Others are free to copy the original. They are not free to copy the copy."). On remand, it will be Masquerade's burden to show that Unique's nose masks incorporate copies, in the copyright law sense, of Masquerade's sculptures, rather than sculptures that derive their similarity to Masquerade's sculptures merely from the commonality of the animal subjects both repre-

sent. *See Mazer v. Stein,* 347 U.S. at 218, 74 S.Ct. at 470 (A "copyright protects originality rather than novelty or invention—conferring only 'the sole right of multiplying copies.' Absent copying there can be no infringement of copyright."); *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 913 (2d Cir.1980) ("[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying."); *Herbert Rosenthal Jewelry Corp. v. Honora J. Co.,* 509 F.2d 64 (2d Cir.1974) (where a defendant did not exactly copy a turtle pin, the similarities between the plaintiff and defendant's pin came primarily from the general shape of turtles, and there were numerous design differences, plaintiff's copyrights were not infringed); *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir.1971) (where there is no greater similarity between the pins of plaintiff and defendant than was inevitable from the use of jewel bee pin forms in both, the idea and its expression were inseparable and copying would not be barred).

### IV.

We will reverse the grant of summary judgment for Unique. Since there remains no dispute of fact with regard to the copyrightability of Masquerade's nose masks, we will remand to the district court for further proceedings on the issue of infringement. Unique's motion to dismiss this appeal will be denied.