**JOSEPH WILLARD, Plaintiff**

v.

**CYNTHIA ABBOTT, Defendant**

Civil No. 656/1984

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

November 26, 1984

FRANK PADILLA, ESQ., Frederiksted, St. Croix, V.I., *for plaintiff*

JEAN–ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

This matter comes before the Court after a two (2) day trial to establish the validity of a deed executed by plaintiff, as grantor, to defendant as grantee. For the reasons set forth below, this Court finds for plaintiff.

## FACTUAL BACKGROUND

This Court having considered all testimony and exhibits presented at trial and having observed the demeanor of an array of witnesses therein, makes the following findings of fact:

Plaintiff, Joseph Willard, is an eighty-two-year-old man who, along with his comatose wife, had resided on the property in question since 1937. In June 1982, at defendant, Cynthia Abbott's behest, plaintiff fired his housekeeper and hired defendant. The evidence discloses that the subject of transferring plaintiff's real property known as No. 100A Estate Whim, Frederiksted, St. Croix, United States Virgin Islands[1] was broached by defendant only two to three weeks after she commenced working for plaintiff. Sexual contact between plaintiff and defendant also began sometime therein and continued until this year.

In August 1983, plaintiff's wife, who had been in a comatose state for almost twenty years, died. Her death severely impacted upon plaintiff's emotional and physical health. In particular, plaintiff was

---

[1] The property, consisting of two improved structures and land was appraised at $80,000.00.

prone to crying fits, was concerned about whether he would live or die, and was generally anxiety ridden and depressed. Concurrently, his physical condition deteriorated to a measurable extent. He suffered from congestive heart failure, high blood pressure and arthritis.

Plaintiff's home environment paralleled his physical and emotional state. The house remained in a state of disarray, windows were kept shut, thus generating a noxious odor throughout the dwelling, and chains were placed on the gate so as to give the appearance that no one was home, thereby discouraging visitors.

Towards the latter part of November, amidst this background and after much prodding by defendant, plaintiff and defendant went to confer with Attorney Ezart Wynter regarding the transfer of plaintiff's property. At plaintiff's request, Wynter prepared a deed transferring all of plaintiff's real property to defendant while retaining a life estate for plaintiff. Wynter also prepared a will devising all of plaintiff's personal property to defendant upon plaintiff's death.

On December 8, 1983, less than four (4) months after Mrs. Willard's death, plaintiff executed both documents thereby granting, or providing for the grant, upon his death, of all of his real and personal property to defendant. In May 1984, through the efforts of friends and neighbors, plaintiff hired another housekeeper, fired defendant and subsequently filed the instant suit.

## DISCUSSION

Where the donor of a gift is aged and physically infirm and a relationship of trust and confidence existed between the donor and donee, the gift is presumed to have been induced by fraud or undue influence and the burden shifts to the donee to show *affirmatively* and *by clear and convincing proof* that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. Joseph v. Eastman, 344 F.2d 9, 12 (3d Cir. 1965); Francois v. Francois, 599 F.2d 1286 (3d Cir.) cert. denied, 444 U.S. 1021, 100 S.Ct. 679, 62 L.Ed.2d 653 (1979).

## PLAINTIFF'S PHYSICAL AND MENTAL CONDITION

The evidence before this Court makes it clear that Willard was aged and physically infirm at the time of the transfer. Plaintiff was eighty-one years old when he executed the deed. The testimony of his physician, Dr. Wilbert Williams, provided significant insight

into plaintiff's physical and mental condition after the death of his wife. Dr. Williams testified that between June 1982 and May 1984, he had treated plaintiff on seventeen (17) different occasions. Dr. Williams recalled that from August through December 1983, plaintiff suffered from congestive heart failure and high blood pressure. He stated that plaintiff was emotionally unstable as characterized by his tendency to weep steadily and repeatedly; his fixation about whether he would live or die; and his anxiety and depression. Plaintiff's neighbors, Kate John and Garford Francois both testified of plaintiff's generally weakened physical appearance. They testified that Willard could no longer perform ordinary chores, such as weeding his garden, which he had done effortlessly prior to his wife's death. John testified further that plaintiff simply looked "down." Indeed, even defendant testified that sometimes plaintiff had complained of pain in his foot and knee and had used a crutch on occasion.

## CONFIDENTIAL RELATIONSHIP

■■ We turn next to the issue of whether a confidential relationship existed between plaintiff and defendant. A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind. Restatement (Second) of Trusts § 2, at 7 (1959). Defendant testified that she and Willard became very close and that Willard trusted her. She reiterated that it was because plaintiff felt that she had been "so good" to him and his wife that he gave her the property. Furthermore, plaintiff testified that he had expected defendant to take care of him and that he had given her money on many occasions. Moreover, Dr. Williams testified that he deduced that a close relationship existed between the parties. He explained that defendant almost always accompanied plaintiff into the examination room—encouraging him to inform Dr. Williams of his ailments, much the way a wife would urge on her husband.

## UNDUE INFLUENCE

■■ Finally, we examine the issue of undue influence. This Court finds that defendant has failed to meet her burden by clear and convincing proof that there was no undue influence exerted upon plaintiff. The essence of undue influence is the subversion of another person's free will in order to obtain assent to an agreement. The degree of persuasion that is necessary to constitute undue influ-

ence varies from case to case. The proper inquiry is not just whether persuasion induced the transaction but whether the result was produced by the domination of the will of the victim by the person exerting the undue influence. Francois, supra, at 1292.

■ The evidence discloses that it was defendant who initiated discussions about the transfer within two to three weeks of her employment. It was defendant who contacted the attorney to draft the papers necessary for the transfer. Although Attorney Wynter testified that he believed he represented Willard, both Abbott and Wynter testified that it was defendant and not plaintiff who paid the attorney's fees. It was to defendant's benefit to allow Wynter to believe that he was representing Willard when he was in fact acting on her behalf. Furthermore, defendant offered no explanation for keeping the windows in the house shut for long periods of time, thereby making plaintiff feel as if he was "in prison." While plaintiff denied the existence of a sexual relationship with Abbott, the Court finds ample support to the contrary. While the nature or extent of the sexual contact is irrelevant, undoubtedly plaintiff's age, combined with the urging or acquiescence of defendant to engage in sexual acts, constituted a motivating force on plaintiff in his decision to transfer the property. The sexual contact occurred for defendant's personal gain and had the effect of enhancing her position. A final consideration is Dr. Williams' testimony to the effect that plaintiff was highly susceptible to suggestions at the time of the transfer. This susceptibility, coupled with the death of Mrs. Willard, plaintiff's physical and mental health, his mistaken expectation that defendant would take care of him, the sexual contact between the parties and the almost prison like environment in which he lived, all lead this Court to conclude that there was some undue influence exerted by defendant.

## VALIDITY OF DEED

■ The combination of defendant's undue influence, plaintiff's age and physical infirmity, the confidential relationship between the parties and the total inadequency of any consideration other than sexual favors by defendant leads this Court to conclude that all was not fair, open, voluntary and well understood when plaintiff transferred his property. Accordingly, this Court finds the deed executed by plaintiff on behalf of defendant to be null and void.[2]

---

[2] Given plaintiff's background, it is clear that this gentleman is capable of executing a will or deed only under circumstances where current medical examinations

## JUDGMENT

This matter came on for trial on September 18 and 19, 1984, before the Court sitting without a Jury. Plaintiff appeared personally and by and through his attorney, Frank Padilla, Esq., and defendant appeared personally and by and through her attorney, Jean-Robert Alfred, Esq. Upon the conclusion of the trial the Court reserved decision and thereafter on November 26, 1984, entered and filed a Memorandum Opinion setting forth its Findings of Fact and Conclusions of Law.

For the reasons set forth in said Memorandum Opinion, it is

ORDERED, ADJUDGED and DECREED that plaintiff have Judgment against the defendant declaring the deed dated December 8, 1983, purporting to convey title to premises known as Plot No. 100-A Whim Estates, West End Quarter, St. Croix, Virgin Islands as shown on Survey Map No. 504 dated June 15, 1955, and revised January 11, 1973, and recorded in the Office of the Recorder of Deeds, Christiansted, St. Croix, Virgin Islands on December 14, 1983, at P.C. 189, page 431 from plaintiff to defendant to be null and void and for nothing holden, and it is further

ORDERED, ADJUDGED and DECREED that plaintiff be awarded reasonable attorney's fees pursuant to 5 V.I.C. § 541 upon submission of an appropriate affidavit in accordance with the requirements of Estien v. Christian.

.

---

overwhelmingly indicate a lucid interval. Under any other circumstances, a guardian should be appointed for such a transfer. Any future transferees should bear this caveat in mind.