## IN THE MATTER OF THE ESTATE OF REGINALD DAVID, Deceased

Probate No. 88/1996

Territorial Court of the Virgin Islands

Div. of St. Croix

July 31, 1998

Renee D. Dowling, Christiansted, St. Croix, U.S.V.I., *for the contestant*

Jeffrey B. C. Moorhead, Christiansted, St. Croix, U.S.V.I., *for the proponent*

STEELE, *Judge*

### MEMORANDUM OPINION

A challenge has been brought before the Court disputing the validity of Reginald David's July 25, 1995 Last Will and Testament. Contestant, Wilson David, alleges that the contents of the document in question were the direct result of undue influence exerted

on the decedent. Proponent, Mary David, maintains that the testament was executed pursuant to the formalities required under Virgin Islands law, and therefore must be enforced. To resolve this conflict, the Court must determine: (1) whether a presumption of undue influence existed at the time the testament was created, and (2) if such a presumption exists, has sufficient evidence been presented to rebut this legal inference.

## I. FACTUAL BACKGROUND

Several relevant facts remain uncontroverted by either party, and are thus set forth in this opinion by the Court so that a full understanding of the present action may be had. The decedent, Reginald David, died August 25, 1996 on the Island of St. Croix, leaving behind his surviving spouse, Mary David, and his only natural child, Wilson David. At the time of his death, the decedent was sixty-six years old and a domiciliary of the Territory. His estate consisted of two houses which sit on one plot of real property located in St. Croix, all of which he owned outright in his own name. Before his death, the decedent resided in one of these houses along with his wife, the Proponent. The other dwelling was occupied by the Contestant and the decedent's two step-daughters. As of this date, these living arrangements remain unchanged.

The marriage between the Proponent and the decedent was not the first for either party. Although an intimate relationship spanning several years existed between the couple, they were not wed until February of 1995. It was not until this union, that the Proponent moved into the decedent's house. On July 25, 1995, the decedent, through the assistance of Legal Services of the Virgin Islands, executed a two page document entitled "Last Will and Testament of Reginald David," hereinafter referred to as "testament" or "Will." This testament is both simple and straight forward. It provides that the Proponent is to be the sole beneficiary of all estate property and appoints her to be the executrix. Furthermore, it states that the testator intentionally chooses to make no provision for his son, the Contestant, although such omission is to have no bearing on his love and affection for him. All testamentary formalities required by Territorial law were complied with, and this aspect of the Will has not been attacked by the

Contestant. It is the very act of the decedent even preparing a will, let alone omitting his only son as an heir, which has led to the allegations of undue influence. During two days of hearings, the Court has heard testimonial evidence from numerous witnesses pertaining to both the events which led to the execution of the Will, and the type of relationship the decedent had with his surviving spouse and his only son. It is upon this information that the Court must make its factual determination concerning the validity of the testament.

## II. DISCUSSION

Contestant has presented an extremely difficult request to the Court. He seeks to have an instrument invalidated which purports to contain decedent's final wishes as to the disposition of his property upon his death. To support this attack, Contestant alleges that the creation of the testament, as well as its contents, were the product of undue influence exerted by the Proponent on the decedent. Thus, the Court is faced first with the task of deciding whether the existence of such an overpowering influence should be presumed or factually determined. If a legal presumption is to be inferred, then the burden will shift to the Proponent of the testament to prove that no undue influence was placed on the decedent.

*A. Confidential Relationship*

Undue influence has been defined as the subversion of another person's free will in order to obtain assent to an agreement. *Francois v. Francois*, 599 F.2d 1286, 1292 (3rd Cir. 1979); *Willard v. Abbott*, 21 V.I. 201, 204 (Terr. Ct. 1984). What degree of persuasion is necessary to constitute this type of influence varies from case to case. *Francois*, 599 F.2d at 1292; *Willard*, 21 V.I. at 204-205. Generally though, the party contesting the transfer of property must present substantial circumstantial evidence to establish the occurrence of undue influence. *Wilkinson v. Simmon*, 34 V.I. 74, 84 (Terr. Ct. 1996). However, if a relationship of trust and confidence existed during the execution of the instrument in question, a legal presumption of undue influence may apply. *Wilkinson*, 34 V.I. at 84; *Gautier v. Gonzales-Latimer*, 25 V.I. 26, 27-28 (Terr. Ct. 1990).

Rarely will the law presume the existence of a confidential relation, usually allowing this issue to be resolved through factual

57

determinations. *Galiber v. Bryan*, 1990 U.S. Dist. LEXIS 20092 (D. VI 1990); *Francois*, 599 F.2d at 1291. The marital relation does not automatically give rise to a confidential relation. *Francois*, 599 F.2d at 1292. Nonetheless, Courts are wary of transactions between those related by blood or marriage since parties tend to relax their general vigilance. *Galiber v. Bryan*, 1990 U.S. Dist. LEXIS 20092 (D. VI 1990). Factors which should be taken into consideration include the actual placing of trust and confidence in one party by the other, reliance sustained for a prolonged period of time, and a disparity in influence of one person on the other such that a position of superiority or domination results. *Galiber v. Bryan*, 1990 U.S. Dist. LEXIS 20092 (D. VI 1990).

■ Turning to the case at hand, the Court is quite aware of the marital relationship the Proponent shared with the decedent. It is the opinion of the Court that the decedent placed much trust and confidence in his wife, as most married men do. Furthermore, some reliance on the Proponent by the decedent surely must have occurred as well. Whether the Proponent ever held a position of superiority over the decedent is highly questionable though. However, seeing as the couple were only married some five (5) months prior to the execution of the testament, and keeping in mind the cautious nature of courts in regards to marriage and undue influence, the Court finds that a confidential relationship between Proponent and decedent was in existence at the time the Will was executed.

### B. Presumption of Undue Influence

When determining the existence of undue influence, the proper inquiry is not whether the transaction was induced through persuasion, but whether the result was produced by the domination of the will of the victim by the person allegedly exerting this overwhelming influence. *Francois*, 599 F.2d at 1292. The instrument in dispute must truly be the product of the decedent's free and independent mind. Any adverse influence must be such that the victim acts in a way contrary to his own best interests. The finding of a confidential relation merely imposes on the party benefitting from the transaction the burden to prove that no unfair advantage was had on the other party due to this relationship. *Id.* at 1292-1293.

■ Where the donor of a gift is aged and physically infirm and a relationship of trust and confidence existed between the donor and the donee, the gift is presumed to have been induced by fraud or undue influence, thus shifting the burden to the donee to show by clear and convincing evidence that the transaction was devoid of undue influence and made under the donor's free will. *Joseph v. Eastman*, 344 F.2d 9, 12 (3d Cir. 1965); *Cruz v. Melendez*, 902 F.2d 232, 234 (3rd Cir. 1990); *Gautier*, 25 V.I. at 27-28; *Wilkinson*, 34 V.I. at 85. Therefore, the finding by the Court that Proponent shared a confidential relationship with the decedent effectively transfers the burden of proof away from the Contestant and lays it squarely on the shoulders of the Proponent. For the foregoing reasons, it is held that the Proponent has met her burden and has shown by clear and convincing evidence that no undue influence was placed on the decedent to either prepare a will or bequeath all of his property to her.

From the outset of these hearings, it is rather obvious to the Court that there is no love lost between the Contestant and the Proponent. The only factor that these opposing parties seem to have ever had in common with each other is kinship to the decedent. At trial, both parties offered testimonial proof to support their respective arguments. In particular, Contestant had numerous witnesses testify for the purpose of strengthening his case. However, besides the document itself, the Court places the greatest weight behind the testimony of Mr. Samuel Grey, the attorney who both interviewed the decedent concerning his desire to create a testament, and prepared the instrument in question. Grey, who has no interest in this dispute, testified that although decedent's wife accompanied him to the offices of Legal Services, only the decedent was present in the room during the interview and execution processes. This was done so Grey could ascertain whether decedent was providing his intentions, and not those of another. Testimony revealed that in the opinion of Grey, the decedent knew what he was doing and did so voluntarily. More importantly however, Grey stated that decedent specifically wished to disin-

herit his son, the Contestant.[1] Furthermore, decedent even told counsel to expect trouble because of this omission.

Additional testimony was given by Richard Austin[2], the individual who notarized the self-proving affidavit attached as page two of the testament. This witness confirmed Grey's assertion that the decedent appeared to know and understand the actions he was taking, and did so voluntarily. The Court finds the testimony of these two professionals to be extremely credible, and combined with the unambiguous language of the decedent's Will, to be sufficient evidence to clearly and convincingly support Proponent's contentions concerning the validity of the testament. Nevertheless, the Court will comment on the evidence provided by the Contestant, thus providing a complete factual determination for the record.

Through his witnesses, Contestant presented testimonial evidence that a close relationship had been shared between himself and his father. This included assisting the decedent in the payment of and repairs to his real property. Further testimony spoke of the omission of the Contestant and the decedent's step-daughters from the marriage ceremonies between the Proponent and the deceased. Evidence was also introduced to show that not only the Contestant, but both step-daughters as well, were off island during the execution of the testament.

Proponent swore under oath that the relationship was not good between father and son. The Court is of the opinion that this view was corroborated, albeit unintentionally, through the testimony given by certain witnesses who appeared on behalf of the Contestant. During these proceedings, it became known that Contestant was a member of the Rastafarian religion. According to the Contestant himself, along with testimony from Girlie Christian, the decedent did not like or approve of the Rastafarian way. Even the longtime friend of the decedent, Charles Jones, stated that the relations between the deceased and his son had its ups and downs.

---

[1] Paragraph *THIRD* of decedent's testament provides:

> I intentionally make no provision for my son, WILSON DAVID, and such omission has no bearing on my love and affection for him.

[2] Richard Austin is an attorney employed with Legal Services of the Virgin Islands, and is currently the Executive Director of this organization.

Assisting a loved one to pay for, or repair his property, is certainly a deed which deserves praise. However noble, these actions do not create any right in this property. Evident to the Court is the existence of a mutual dislike between the Proponent and the Contestant. For the Proponent, this bad blood extends to the decedent's step-daughters as well. This could explain the omission of the children from the marriage ceremony, and is a possible reason for disinheriting the Contestant. It is quite plausible that the decedent recognized this dilemma, and realized that without his presence, these two groups of people could not coincide in such a close proximity of each other. But this is merely speculation, and it is not the place of this Court to determine what the decedent's thought process was. What is known, is that the decedent is no longer capable of coming forward to give his side of the story. The only guidance he is capable of providing to the Court is through his last will and testament. As this is the only means available to ascertain the decedent's true intentions, the Court favors giving effect to the testamentary instrument.

Additionally, several other factors were introduced by the Contestant to suggest the existence of undue influence. These included the domineering nature of the Proponent, her denial of the existence of a testament, her behavior at the hospital prior to decedent's death, and decedent's medical condition at the time he executed his Will. The Court finds the Proponent to be a strong person, however this classification should not be confused with domination. It is the opinion of the Court that the decedent controlled his own actions. The credibility of the testimony supplied by Contestant and the decedent's step-daughters is highly suspect, and no weight is given to these statements. As for decedent's medical condition, he had high blood pressure and suffered from diabetes. He did not have his first stroke until November of 1995, several months after he executed his testament. The testimony elicited from Dr. Evangelista proved ineffective and non-relevant, as the doctor did not even begin treating the decedent until December of 1995. The Court simply does not believe the allegations presented by the Contestant, especially in light of the Will itself and the testimony of the persons who were present the day the instrument was executed. The Court will not ignore the final wishes of the decedent.

## III. CONCLUSION

The purpose of a last will and testament is to effectively allow an individual the opportunity to direct the disposition of his estate beyond the grave. For this reason, such an instrument should be found valid if at all possible. An exception to this rule is of course the exertion of undue influence on the testator so that the contents of the testament do not represent his own free will. Case law has created a presumption of undue influence if the person benefitting from the testament shared a confidential relation with the testator at the time the instrument is executed. Upon reviewing the facts presented in this particular case, the Court finds that the Proponent, who is the surviving spouse of the decedent, shared a confidential relation with him when the document in question was created. With this determination, the burden switched from the Contestant to the Proponent, who now had to establish by clear and convincing proof that the testament was not a result of undue influence. After evaluating all the evidence produced, the Court finds that the Proponent has more than met this standard. The language of the testament is unambiguous and quite clear with its intentions. Testimony of the persons who assisted in the document's creation substantiate its contents, and furthermore provide compelling proof that the decedent was acting on his own volition.

■ The Court questions the credibility of several of the Contestant's witnesses, especially that of the Contestant himself and the decedent's step-daughters. The revelations which emerged during testimony is that the opposing parties do not like one another. This mutual dislike appears to have began while the decedent was still alive, and remains strong to this day. It is understandable that the children feel bitterness towards the Proponent, as the decedent left her everything. However, the Court is mindful that the length of a marriage is not a proper gauge for love. The decedent apparently felt the need to provide for his wife upon the occurrence of his death. Its not the Court's place to fix a marital time limitation before this form of protection may be taken. Ample proof was presented so as to validate the July 25, 1995 "Last Will and Testament of Reginald David." Therefore, Contestant's challenge is without merit, and the decedent's testament will be probated.